Coös,
June 4, 1929.

GEORGE HAWKINS *v.* EDWARD R. B. McGEE.

*Ovide J. Coulombe* and *Ira W. Thayer* (*Mr. Thayer* orally), for the plaintiff.

*Matthew J. Ryan* and *Crawford D. Hening* (by brief and orally), for the defendant.

BRANCH, J. 1. The operation in question consisted in the removal of a considerable quantity of scar tissue from the palm of the plaintiff's right hand and the grafting of skin taken from the plaintiff's chest in place thereof. The scar tissue was the result of a severe burn caused by contact with an electric wire, which the plaintiff received about nine years before the time of the transactions here involved. There was evidence to the effect that before the operation was performed the plaintiff and his father went to the defendant's office and that the defendant in answer to the question, "How long will the boy be in the hospital?", replied, "Three or four days, . . . not over four; then the boy can go home, and it will be just a few days when he will be able to go back to work with a perfect hand." Clearly this and other testimony to the same effect would not justify a finding that the doctor contracted to complete the hospital treatment in three or four days or that the plaintiff would be able to go back to work within a few days thereafter. The above statements could only be construed as expressions of opinion or predictions as to the probable duration of the treatment and plaintiff's resulting disability, and the fact that these estimates were exceeded would impose no contractual liability upon the defendant. The only substantial basis for the plaintiff's claim is the testimony that the defendant also said before the operation was decided upon, "I will guarantee to make the hand a hundred per cent perfect hand" or "a hundred per cent good hand." The plaintiff was present when these words were alleged to have been spoken, and if they are to be taken at their face value, it seems obvious

that proof of their utterance would establish the giving of a warranty in accordance with his contention.

The defendant argues, however, that even if these words were uttered by him, no reasonable man would understand that they were used with the intention of entering into any "contractual relation whatever," and that they could reasonably be understood only "as his expression in strong language that he believed and expected that as a result of the operation he would give the plaintiff a very good hand." It may be conceded, as the defendant contends, that before the question of the making of a contract should be submitted to a jury, there is a preliminary question of law for the trial court to pass upon, i. e. "whether the words could possibly have the meaning imputed to them by the party who founds his case upon a certain interpretation," but it cannot be held that the trial court decided this question erroneously in the present case. It is unnecessary to determine at this time whether the argument of the defendant based upon "common knowledge of the uncertainty which attends all surgical operations" and the improbability that a surgeon would ever contract to make a damaged part of the human body "one hundred per cent perfect" would, in the absence of countervailing considerations, be regarded as conclusive, for there were other factors in the present case which tended to support the contention of the plaintiff. There was evidence that the defendant repeatedly solicited from the plaintiff's father the opportunity to perform this operation, and the theory was advanced by plaintiff's counsel in cross-examination of defendant, that he sought an opportunity to "experiment on skin grafting" in which he had had little previous experience. If the jury accepted this part of plaintiff's contention, there would be a reasonable basis for the further conclusion that if defendant spoke the words attributed to him, he did so with the intention that they should be accepted at their face value, as an inducement for the granting of consent to the operation by the plaintiff and his father, and there was ample evidence that they were so accepted by them. The question of the making of the alleged contract was properly submitted to the jury.

2. The substance of the charge to the jury on the question of damages appears in the following quotation: "If you find the plaintiff entitled to anything, he is entitled to recover for what pain and suffering he has been made to endure and what injury he has sustained over and above the injury that he had before." To this instruction the defendant seasonably excepted. By it, the jury was permitted to consider two elements of damage, (1) pain and suffering due to the

operation, and (2) positive ill effects of the operation upon the plaintiff's hand. Authority for any specific rule of damages in cases of this kind seems to be lacking, but when tested by general principle and by analogy, it appears that the foregoing instruction was erroneous.

"By 'damages' as that term is used in the law of contracts, is intended compensation for a breach, measured in the terms of the contract." *Davis* v. *Company*, 77 N. H. 403, 404. The purpose of the law is to "put the plaintiff in as good a position as he would have been in had the defendant kept his contract." 3 Williston, Cont., s. 1338; *Hardie &c. Co.* v. *Company*, 150 N. C. 150. The measure of recovery "is based upon what the defendant should have given the plaintiff, not what the plaintiff has given the defendant or otherwise expended." 3 Williston, Cont., s. 1341. "The only losses that can be said fairly to come within the terms of a contract are such as the parties must have had in mind when the contract was made, or such as they either knew or ought to have known would probably result from a failure to comply with its terms." *Davis* v. *Company*, 77 N. H. 403, 404; *Hurd* v. *Dunsmore*, 63 N. H. 171.

The present case is closely analogous to one in which a machine is built for a certain purpose and warranted to do certain work. In such cases, the usual rule of damages for breach of warranty in the sale of chattels is applied and it is held that the measure of damages is the difference between the value of the machine if it had corresponded with the warranty and its actual value, together with such incidental losses as the parties knew or ought to have known would probably result from a failure to comply with its terms. *Hooper* v. *Story*, 155 N. Y. 171, 175; *Adams &c. Co.* v. *Wimbish*, 201 Ala. 548; *Isaacs* v. *Company*, 108 Kan. 17; *Paducah &c. Co.* v. *Proctor*, 210 Ky. 806; *Pioneer &c. Co.* v. *McCurdy*, 151 Minn. 304; *Christian &c. Co.* v. *Goodman*, 132 Miss. 786; *Hardie &c. Co.* v. *Company*, 150 N. C. 150; *York Mfg. Co.* v. *Company*, 278 Pa. St. 351; *General Motors &c. Co.* v. *Company*, 47 R. I. 88; *Cavanagh* v. *Company*, 24 S. D. 349; *Foutty* v. *Company*, 99 W. Va. 300. The rule thus applied is well settled in this state. "As a general rule, the measure of the vendee's damages is the difference between the value of the goods as they would have been if the warranty as to quality had been true, and the actual value at the time of the sale, including gains prevented and losses sustained, and such other damages as could be reasonably anticipated by the parties as likely to be caused by the vendor's failure to keep his agreement, and could not by reasonable care on the part of the vendee have been avoided." *Union Bank* v. *Blanchard*, 65 N. H. 21,

23; *Hurd* v. *Dunsmore, supra; Noyes* v. *Blodgett,* 58 N. H. 502; P. L., c. 166, s. 69, vii. We, therefore, conclude that the true measure of the plaintiff's damage in the present case is the difference between the value to him of a perfect hand or a good hand, such as the jury found the defendant promised him, and the value of his hand in its present condition, including any incidental consequences fairly within the contemplation of the parties when they made their contract. 1 Sutherland, Damages, (4th *ed.*), s. 92. Damages not thus limited, although naturally resulting, are not to be given.

The extent of the plaintiff's suffering does not measure this difference in value. The pain necessarily incident to a serious surgical operation was a part of the contribution which the plaintiff was willing to make to his joint undertaking with the defendant to produce a good hand. It was a legal detriment suffered by him which constituted a part of the consideration given by him for the contract. It represented a part of the price which he was willing to pay for a good hand, but it furnished no test of the value of a good hand or the difference between the value of the hand which the defendant promised and the one which resulted from the operation.

It was also erroneous and misleading to submit to the jury as a separate element of damage any change for the worse in the condition of the plaintiff's hand resulting from the operation, although this error was probably more prejudicial to the plaintiff than to the defendant. Any such ill effect of the operation would be included under the true rule of damages set forth above, but damages might properly be assessed for the defendant's failure to improve the condition of the hand even if there were no evidence that its condition was made worse as a result of the operation.

It must be assumed that the trial court, in setting aside the verdict, undertook to apply the same rule of damages which he had previously given to the jury, and since this rule was erroneous, it is unnecessary for us to consider whether there was any evidence to justify his finding that all damages awarded by the jury above $500 were excessive.

3. Defendant's requests for instructions were loosely drawn and were properly denied. A considerable number of issues of fact were raised by the evidence, and it would have been extremely misleading to instruct the jury in accordance with defendant's request number 2, that "The only issue on which you have to pass is whether or not there was a special contract between the plaintiff and the defendant to produce a perfect hand." Equally inaccurate was defendant's request number 5, which reads as follows: "You would have to find, in order

to hold the defendant liable in this case, that Dr. McGee and the plaintiff both understood that the doctor was guaranteeing a perfect result from this operation." If the defendant said that he would guarantee a perfect result and the plaintiff relied upon that promise, any mental reservations which he may have had are immaterial. The standard by which his conduct is to be judged is not internal but external. *Woburn &c. Bank* v. *Woods*, 77 N. H. 172; *McConnell* v. *Lamontagne*, 82 N. H. 423, 425; *Eleftherion* v. *Company, ante,* 32. Defendant's request number 7 was as follows: "If you should get so far as to find that there was a special contract guaranteeing a perfect result, you would still have to find for the defendant unless you further found that a further operation would not correct the disability claimed by the plaintiff." In view of the testimony that the defendant had refused to perform a further operation, it would clearly have been erroneous to give this instruction. The evidence would have justified a verdict for an amount sufficient to cover the cost of such an operation, even if the theory underlying this request were correct.

4. It is unlikely that the questions now presented in regard to the argument of plaintiff's counsel will arise at another trial, and, therefore, they have not been considered.

*New trial.*

MARBLE, J., did not sit: the others concurred.