ELAINE HARRINGTON & another vs. JONATHAN COHEN.

Suffolk.    March 20, 1978. — March 31, 1978.

Present: KEVILLE, ARMSTRONG, & BROWN, JJ.

*Negligence*, Doctor. *Medical Malpractice. Damages*, Medical Malpractice.

In an action for negligence in performing a surgical procedure to correct the plaintiff's spinal deformity, which persisted after the operation was terminated prematurely because of complications, the judge did not err in ruling that if the jury should find the defendant negligent the damages assessed against him were to be confined to the operation performed by him and were not to include the damages stemming from a second surgical procedure performed to correct the plaintiff's spinal deformity rather than to cure any injury inflicted in the earlier operation. [207-209]

CONTRACT AND TORT. Writ in the Superior Court dated September 6, 1972.

The action was tried before *Connolly, J.*

*Bernard A. Miller* (*Charles F. Nayor* with him) for the plaintiffs.

*Wilson D. Rogers, Jr.* (*Charles J. Dunn, Jr.*, with him) for the defendant.

ARMSTRONG, J. The minor plaintiff suffered from a severe spinal deformity, or scoliosis, which became more pronounced as she grew older. When she was thirteen years old, a group of doctors, including the defendant, recommended that she undergo a complicated and risky orthopedic procedure, the first stage of which involved setting her spine in rigid traction aimed at straightening it mechanically to whatever extent reasonably possible. The second stage involved an operation which would effect a fusion of portions of her spine, so that extreme deformity would not recur. She would then remain in

another type of rigid traction until the process of fusion was complete, perhaps as long as six months.

She entered a hospital on February 18, 1970, and the defendant proceeded with the first stage, the application of a halofemoral traction device. "Halo" refers to a band of metal wrapped around the skull, secured with four pins implanted in the skull, two over the eyes and two above and behind the ears. Other pins are driven into the patient's thigh bones, and metal traction rods then connect the head and thighbone implants. The defendant implanted the pin over the minor plaintiff's left eye, and later relocated that pin. One or both of those pins were positioned in a negligent manner, lower than sound medical practice dictated. This caused severe pain and the pin site became infected, with the result that the halo had to be removed and the traction terminated before the second, or fusion, stage of the intended treatment was reached. The minor plaintiff was discharged from the hospital on March 16, 1970, and subsequently the pinholes healed, apparently successfully.

The minor plaintiff was readmitted to the hospital on September 17, 1970, and the same procedure was again initiated. The defendant was no longer on the orthopedic rotation and played no part in her treatment during the second hospitalization. The first and second stages having apparently been carried out successfully, the minor plaintiff was put in "halo cast" traction, employing the same halo used in stage one (but without femoral pins). The halo pin sites became infected, and the halo had to be removed prematurely. Soon thereafter the minor plaintiff developed symptoms of neurological disorder leading to the discovery of a brain abscess at the site of the removal of the left rear halo pin. A craniotomy was performed, and abscessed brain tissue was removed. This left scar tissue on the brain, resulting in seizures of an epileptic type which (the plaintiffs offered to prove) necessitated repeated hospitalizations and persisted to the time of trial.

The minor plaintiff and her mother brought suit for malpractice against the defendant and two other doctors. There was evidence that the abscess resulted from the infection caused by the left rear pin of the halo implanted in the second, or September, hospitalization; there was also evidence that it did not result from the first halo, and the appendix reveals no evidence to the contrary. The judge ruled that if the jury should find negligence on the defendant's part, the damages assessed against him were to be confined to the first hospitalization and its attendant damages and were not to include the second hospitalization and the damages stemming from the ensuing brain abscess and epilepsy. The jury returned a verdict for the plaintiffs for $13,500, and the plaintiffs appealed, alleging as error the rulings by which the judge confined the jury's consideration of damages to those incurred prior to the September hospitalization. The defendant did not appeal; the jury's finding that he negligently applied the first halo is thus no longer in issue.

The plaintiffs build their argument against the judge's ruling on damages by focusing on the evidence offered at trial concerning the high degree of risk known to attend the type of operation performed. As one doctor testified: "There are risks of injury to the nerves, particularly the cranial nerves or nerves in the head that control certain of the facial muscles and the eyes. There are risks of injury to a structure known as brachial plexus, which are the series of nerves that control the muscles of the upper extremities or arms. There is also a potential risk to the spinal cord itself from excessive stretch. There are risks from the pins directly in terms of infection at any pin site that penetrates the skin. There is risk of the halo slipping out of place. There is risk of the pins perforating the skull. And we now know that there is risk of brain abcess secondary to the halo, and to any form of instrumentation or caliper or clamp on the skull." The defendant himself testified that "there are varying figures given for the number of pin sites that do get infected, varying from

between twenty-five [per cent] and I guess forty-five [per cent] or so. But in my experience nearly all of them show at least minimal signs of infection after a period of time." The theory of liability advanced is that the surgical procedure the plaintiff underwent entails an unusually high degree of risk; that the failure to perform the procedure properly the first time foreseeably necessitated performing it a second time and thus foreseeably exposed the minor plaintiff twice to an unusual risk she would have had to face only once had the defendant exercised due care.

The plaintiff's contention is untenable, whether viewed as matter of logic or legal theory. Multiple exposures to a risk of complications necessarily multiply the chance that the complications will occur, but that is not the same as to say that the risk is greater on each subsequent exposure. A flipped coin is not more likely to land heads because it landed tails on the previous flip; the odds are the same each time. Such is the situation that we have on the evidence in this case, where there is no testimony that application of a halo imparts a propensity or weakness which makes it more likely that complications will develop the second time a halo is applied. On the evidence in this case, the risk of the complications that the minor plaintiff in fact suffered in the September operation was not increased by the February operation.

The September operation was necessitated, not by the failure of the February operation, but by the minor plaintiff's spinal deformity. That condition was not made more severe, or more difficult to cure, by the defendant's aborted effort in February. In such a situation § 457 of the Restatement (Second) of Torts (1965), on which the plaintiff relies, has no application. That section would apply to the present case if the September operation had been for the purpose of curing or alleviating an injury inflicted in the February operation.

We recognize that, if the February operation had been successful, the minor plaintiff would not have had to un-

dergo the September operation which led to her principal injuries. But (at least in the absence of a promise or guarantee of success) the damages a plaintiff may recover as a result of the failure of an operation are grounded in the concept of restoring the plaintiff to the position he was in before the operation was performed. *Sullivan* v. *O'Connor*, 363 Mass. 579, 581–588 (1973). The rule for which the plaintiffs contend would carry the recovery a step beyond, making the physician who negligently fails to cure a condition liable as though he had caused the condition, and expectancy damages (as in *Hawkins* v. *McGee*, 84 N.H. 114 [1929]) would become the measure of recovery in the usual medical malpractice case.

> *Order denying motion for new trial affirmed.*
> *Judgment affirmed.*