**Sylvia VAN ZEE, Plaintiff and Appellant,**

v.

**D.J. WITZKE, M.D., Defendant and Appellee.**

**No. 16343.**

Supreme Court of South Dakota.

Considered on Briefs March 24, 1989.

Decided Aug. 30, 1989.

Steven L. Jorgensen, Sioux Falls, for plaintiff and appellant.

Carleton R. Hoy, James L. Hoy of Hoy & Hoy, Sioux Falls, for defendant and appellee.

MORGAN, Justice.

### ACTION

As a result of complications after surgery on one of her fingers, Sylvia Van Zee (Van Zee) brought negligence and breach of contract actions against Dr. D.J. Witzke (Dr. Witzke). Summary judgment was entered in favor of Dr. Witzke on all of Van Zee's claims. Van Zee appeals only the adverse summary judgment on her breach of contract cause of action. We affirm.

### FACTS

Van Zee began attending court reporting school in September 1982. As a child, Van Zee suffered a trauma to her right third finger in a car accident. This trauma created a deformity in the finger which caused it to lock up when Van Zee extended it to type.

In August 1984, Van Zee consulted Dr. Witzke, a reconstructive and plastic surgeon, about performing surgery on her finger. Although Van Zee was interested in improving the dexterity of her finger, her primary interest in having surgery was more cosmetic than the fact that the finger was hindering her court reporting. Dr. Witzke examined and X-rayed the finger finding metallic sutures in the flexor tendons. He diagnosed a Swann neck deformity, a hyperextension of the first joint of the finger which is a functional disability. No immediate decision on the surgery was made by Van Zee after the diagnosis.

Approximately three months after her initial consultation, Van Zee again consulted Dr. Witzke. Dr. Witzke agreed to operate on her finger and performed the surgery on December 4, 1984. The next day, Dr. Witzke inspected the finger, which looked fine, and put a plaster fitting around Van Zee's forearm to hold the finger in position.

Dr. Witzke saw Van Zee seven days later. Her finger had an acute infection. Dr. Witzke removed the splint, inserted internal K-wires, placed Van Zee on antibiotics and instructed her to soak the finger in betadine. Thereafter, Dr. Witzke saw Van Zee every two or three days to monitor the infection. He also encouraged Van Zee to see a physical therapist.

Van Zee began physical therapy for her finger on February 1, 1985, but quit after February 13 because the therapist had fractured her finger.[1] Van Zee returned to Dr. Witzke who treated the fracture and recommended continued therapy when the finger healed. Van Zee refused to participate in any further physical therapy and her finger slowly deteriorated and got stiffer.

Dr. Witzke last saw Van Zee on October 16, 1985. Her finger was stiff and had a slight deformity of the distal tip. The finger was not very useful.

Van Zee commenced the present action in December 1986. Her complaint alleged causes of action against Dr. Witzke in three counts: Count I, breach of an express agreement to correct the deformity in her finger; Count II, negligent application of the cast to her finger following surgery; and, Count III, negligent referral for physical therapy. Dr. Witzke moved for summary judgment in May 1988. After a hearing, the trial court granted summary judgment in favor of Dr. Witzke on all of Van Zee's claims. Van Zee appeals only that portion of the summary judgment relating to her breach of contract action (Count I).

## ISSUE

DID THE TRIAL COURT PROPERLY GRANT SUMMARY JUDGMENT FOR DR. WITZKE ON VAN ZEE'S CLAIM FOR BREACH OF AN EXPRESS CONTRACT TO HEAL?

## DECISION

The standard of review of the grant or denial of a summary judgment is well established:

In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. *Groseth Intern., Inc. v. Tenneco, Inc.*, 410 N.W.2d 159, 164 (S.D.1987). The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. *Ruane v. Murray*, 380 N.W.2d 362, 364 (S.D.1986). Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgement is proper. *Weatherwax v. Hiland Potato Chip Co.*, 372 N.W.2d 118,

---

1. *See Van Zee v. Reding*, 436 N.W.2d 844 (S.D. 1989).

120 (S.D.1985); *Ruple v. Weinaug,* 328 N.W.2d 857, 859–60 (S.D.1983).

*Pickering v. Pickering,* 434 N.W.2d 758, 760–61 (S.D.1989).

Van Zee argues that the trial court erred in granting Dr. Witzke summary judgment because a genuine issue of material fact is present concerning the existence of an express contract to heal her finger. We disagree.

■ A physician or surgeon normally undertakes only to exercise the skill and care common to the profession. *Shamburger v. Behrens,* 380 N.W.2d 659 (S.D.1986); *Van Zee² v. Sioux Valley Hospital,* 315 N.W.2d 489 (S.D.1982). However:

> A doctor may, although he seldom does, contract to cure a patient, or to accomplish a particular result, in which case the doctor may be liable for breach of contract when he does not succeed. In the absence of such an express agreement, the doctor does not warrant or insure either a correct diagnosis or a successful course of treatment, and the doctor will not be liable for an honest mistake of judgment, where the proper course is open to reasonable doubt.

W. Prosser & W. Keeton, The Law of Torts § 32 (5th ed. 1984) (footnotes omitted). *See* 1 D. Louisell & H. Williams, Medical Malpractice ¶ 8.10 (1989); Annotation, *Recovery Against Physician on Basis of Breach of Contract to Achieve Particular Result or Cure,* 43 A.L.R.3d 1221 (1972); 61 Am. Jur.2d *Physicians, Surgeons, and Other Healers* § 161 (1981); 70 C.J.S. *Physicians and Surgeons* § 59 (1987).

■ "The existence of a valid express contract is a question of law to be determined by a court, not a jury." *Mid–America Marketing Corp. v. Dakota, Etc.,* 289 N.W.2d 797, 799 (S.D.1980). In determining whether a physician has entered into an express contract to heal, courts have been careful to distinguish between a doctor's promise of a particular result from mere generalized statements that the result of the treatment will be good. *McKinney v. Nash,* 120 Cal.App.3d 428, 174 Cal.Rptr.

642 (Cal.Ct.App.1981). As the Supreme Court of Michigan observed long ago:

> A doctor and his patient, of course, have the same general liberty to contract with respect to their relationship as other parties entering into [a] consensual relationship with one another, and a breach thereof will give rise to a cause of action. It is proper to note, with respect to the contracts of physicians, that certain qualitative differences should be observed, since the doctor's therapeutic reassurance that his patient will be all right, not to worry, must not be converted into a binding promise by the disappointed or quarrelsome.

*Stewart v. Rudner,* 349 Mich. 459, 84 N.W.2d 816, 822–23 (1957).

In this instance, Dr. Witzke's office notes indicated that he discussed all of the risks, alternatives and imponderables of surgery with Van Zee. During his deposition he explained that this included an increased risk of infection and delayed healing due to previous scarring, free tendon grafts, highly motivated post-operative physical therapy and the possibility of a useless or lost finger. According to Van Zee, Dr. Witzke, "never said there were any risks."

Dr. Witzke testified that he told Van Zee during her initial consultation that he would only consider doing the surgery if she felt that the functional disability was so great that she could not continue court reporting school. Van Zee testified that she delayed having surgery after the initial consultation in order to arrange financing for the operation.

Van Zee's mother, who ultimately financed the surgery, was opposed to the operation and wanted Van Zee to obtain a guarantee from the doctor that the finger would be all right. Van Zee herself testified that she told her mother that no doctor would do that. Nevertheless, Van Zee stated that she did ask Dr. Witzke for a guarantee. According to Van Zee, Dr. Witzke, "took my hand and he looked at it and he said I can tell you right now no matter what it won't be any worse than it is right now," and assured her that, "there would

---

**2.** This case is unrelated to the present action.

be no problem at all." According to Dr. Witzke, he told her, "[t]here are no absolute guarantees."

■ Viewing the claimed statements as detailed by Van Zee in a light most favorable to her, we agree that they fail the clear proof of an express contract upon which to ground liability. Van Zee's sole proof of any express agreement by Dr. Witzke to heal her finger is limited to the statement made by him in response to her request for a guarantee. In *Karriman v. Orthopedic Clinic*, 516 P.2d 534 (Okla. 1973), the Supreme Court of Oklahoma reviewed a back patient's suit against his orthopedic surgeons for breach of an express guarantee to heal. As in this case, the guarantee was premised on statements by one of the surgeons that the patient would not be, and could not possibly be, worse off after surgery. The Oklahoma high court found the evidence insufficient to show that a special contract of warranty was entered into between the patient and the doctors.

■ We are in accord with the conclusion of the Oklahoma court and find Dr. Witzke's statement that Van Zee's finger would not be worse off after surgery insufficient as a matter of law to constitute an express contract to heal the finger. The statement falls into the category of statements constituting mere therapeutic reassurances of a good result. Accordingly, we find no error by the trial court in granting Dr. Witzke summary judgment on Van Zee's cause of action for breach of an express contract to heal.

Affirmed.

WUEST, C.J., and MILLER, J., concur.

HENDERSON, J., concurs with writing.

SABERS, J., disqualified.

HENDERSON, Justice (concurring).

If any basis exists to support the trial court's ruling for summary judgment, that ruling should be affirmed. *Uken v. Sloat*, 296 N.W.2d 540, 542 (S.D.1980). *Accord:*

*Blote v. First Federal Sav. & Loan Ass'n.*, 422 N.W.2d 834, 836 (S.D.1988).

An express contract results when the parties mutually express an intent to be bound by specific terms and conditions. *Lang v. Burns*, 77 S.D. 626, 630, 97 N.W.2d 863, 865 (1959). *Accord: Sulzbach v. Town of Jefferson*, 83 S.D. 156, 159, 155 N.W.2d 921, 923 (1968). Appellant seeks a jury trial based upon breach of contract. As the majority opinion points out, a determination of a valid express contract—being in existence—is a question of law to be determined by court and not by a jury. *Mid–America Marketing Corp.*, at 799.

In appellant's testimony, inter alia, page 16 of her deposition, she states: "I said my mother does not want me to have this done and [Dr. Witzke] took my hand and he looked at it and he said 'I can tell you right now no matter what it won't be any worse than it is right now' ". Appellant further testified: "I said mother, no doctor in the world is going to do that (give a guarantee) * * * ".

It is difficult to find, in law, a mutual expression of intent to be bound by specific terms and conditions, when one considers appellant's own remarks. Not suggesting that the words would be magic, but there is no language such as "promise", "guarantee", or "warranty". Somewhere, there must be an intent by these parties to achieve a particular result. This latter statement of mine can be traced back to a very early case in American law, *Hawkins v. McGee*, 84 N.H. 114, 146 A. 641 (1929). *Hawkins* is a hallmark case which one sees often quoted in the thread of this type of case.

Therefore, believing that she cannot rise to a more favorable version of the facts than she, herself, testified to, I respectfully join the majority opinion. *Bunkers v. Mousel*, 83 S.D. 45, 48, 154 N.W.2d 208, 209 (1967).