Ronald J. VANHIERDEN,
Plaintiff-Appellant,†

v.

Jack SWELSTAD, M.D. and Injured Patients and
Families Compensation Fund,
Defendants-Respondents,

TRANSPORTATION INSURANCE COMPANY,
Subrogated Defendant.

Court of Appeals

*No. 2009AP544. Submitted on briefs August 10, 2009.
—Decided December 30, 2009.*

2010 WI App 16

(Also reported in 779 N.W.2d 441.)

† Petition to Review denied 3/16/10.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Philip A. Munroe* of *Di Renzo & Bomier, LLC*, Neenah.

On behalf of the defendant-respondent Jack Swelstad, M.D., the cause was submitted on the briefs of *Robert L. McCracken* and *Ryan R. Graff*, Manitowoc.

On behalf of the defendant-respondent Injured Patients and Families Compensation Fund, the cause was submitted on the brief of *George Burnett* and *T. Wickham Schmidt* of *Liebmann, Conway, Olejniczak & Jerry, S.C.*, Green Bay.

Before Lundsten, Higginbotham and Bridge, JJ.

¶ 1. BRIDGE, J. Ronald VanHierden brought suit against Dr. Jack Swelstad and the Injured Patients and Families Compensation Fund for breach of contract due to Dr. Swelstad's failure to cure VanHierden's pain. The circuit court granted Dr. Swelstad's motion for summary judgment, ruling as a matter of law that no contract to cure was formed. We agree and therefore affirm.

## BACKGROUND

¶ 2. On February 20, 2002, VanHierden injured his left thumb and hand in a work-related accident and underwent surgery on the same day to repair it. Following the surgery, VanHierden developed reflex sympathetic dystrophy which resulted in persistent pain in the base of his left thumb. VanHierden was ultimately referred to Dr. Swelstad, a surgeon, regarding the possibility of having a sympathectomy performed to alleviate his pain.

¶ 3. VanHierden met with Dr. Swelstad on August 5, 2002. According to VanHierden, Swelstad told him, "we're going to get rid of your pain and we're going to get you back to work."[1] Following his consultation with Dr. Swelstad, VanHierden elected to have the sympath-

---

[1] The circuit court's ruling was based on this single statement. The parties dispute whether the court should also have

ectomy performed and executed a written consent for surgery form on August 7, 2002, the date of the surgery. This form, which was signed by both VanHierden and Dr. Swelstad, provided in relevant part:

> The procedure listed under paragraph 1 has been fully explained to me by Dr. Swelstad and I completely understand the nature and consequences of the procedure(s). I have further had explained to me and discussed available alternatives and possible outcomes, and understand the risk of complications, serious injury or even death that may result from both known and unknown causes. I have been informed that there are other risks that are adherent to the performance of any surgical procedure. I am aware that the practice of medicine and surgery is not an exact science and I acknowledge that no guarantees have been made to me concerning the results of the operation or procedure(s).

¶ 4.    Dr. Swelstad performed the sympathectomy but, according to VanHierden, the surgery did not end his pain, nor did it allow him to return to work. Rather, he claims that his pain worsened and he has since undergone "an extensive course of medical treatment resulting in economic and non-economic losses including severe unrelenting pain which has left [him] totally disabled."

¶ 5.    VanHierden brought suit against Dr. Swelstad for breach of contract based on the theory that Dr. Swelstad breached a contract to cure VanHierden. Dr.

---

considered a second alleged statement by Dr. Swelstad that it was a "simple procedure, it's been done a million times; he's done it hundreds of times; that [VanHierden's] pain would be cured and he would go back to work." VanHierden's ex-wife testified during her deposition that Dr. Swelstad made this statement to VanHierden during the August 5, 2002 visit. We need not resolve this dispute because, even if we assumed that Dr. Swelstad made these additional statements, our analysis would be the same.

Swelstad moved for summary judgment, arguing in part that he had not offered or promised to cure VanHierden. The Injured Patients and Families Compensation Fund filed a brief in support of Dr. Swelstad's motion.

¶ 6.   The circuit court ruled as a matter of law that a contract was never formed and, therefore, granted Dr. Swelstad's motion for summary judgment. It ruled that Dr. Swelstad's statement "is a textbook case of a mere expression of intention, opinion, or prophecy," and that "a reasonable person in the position of [VanHierden] would not have understood this statement to create a binding warranty or contract." VanHierden appeals.

## STANDARD OF REVIEW

¶ 7.   We review summary judgments de novo, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶ 6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2007–08).[2]

## DISCUSSION

¶ 8.   Patients seeking money damages from a physician generally do so under the theory of malpractice; however, other theories of recovery, including breach of contract, have been utilized as well. Jack W. Shaw, Jr., Annotation, *Recovery Against Physician on Basis of Breach of Contract to Achieve Particular Result or Cure,*

---

[2] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

43 A.L.R.3d 1221, § 2[a] (1971). In Wisconsin, malpractice actions "may sound in either tort or contract." *McMahon v. Brown*, 125 Wis. 2d 351, 353, 371 N.W.2d 414 (Ct. App. 1985).

¶ 9. As a general rule, physicians are neither the warrantor of a cure, nor the guarantor of the result of his or her treatment. *Ehlinger v. Sipes,* 155 Wis. 2d 1, 14, 454 N.W.2d 754 (1990). Wisconsin courts have recognized, however, that a physician may bind himself or herself by contracting to cure a patient or to accomplish a particular result. *See Reynolds v. Graves*, 3 Wis. 416 (1854) (analyzing whether the plaintiff proved the existence of an agreement on the part of the physician to cure the plaintiff's ailment); *see also McMahon*, 125 Wis. 2d 351.

¶ 10. The law recognizes that a doctor's contract to cure must be express, since a promise to cure is neither implied nor presumed in the contract between doctor and patient:

> A doctor may, although he seldom does, contract to cure a patient, or to accomplish a particular result, in which case the doctor may be liable for breach of contract when he does not succeed. In the absence of such an express agreement, the doctor does not warrant or insure either a correct diagnosis or a successful course of treatment . . . .

*Van Zee v. Witzke*, 445 N.W.2d 34, 36 (S.D. 1989) (citing WILLIAM L. PROSSER & W. KEETON, THE LAW OF TORTS § 32 (5th ed. 1984)). Further, there must be clear proof that the contract was made in order for a physician to be held liable for breach of contract under such circumstances. *See* 1 RICHARD A. LORD, WILLISTON ON CONTRACTS § 62:14 (4th ed. 2002); 61 Am. Jur. *Physicians, Sur-*

geons, etc., § 161 at 293 (1999). *See also Gault v. Sideman*, 191 N.E.2d 436, 441 (Ill. App. 1963) (proof of contract between physician and patient to cure must be clear); *Sullivan v. O'Connor*, 296 N.E.2d 183, 186 (Mass. 1973) (noting that the law requires clear proof of a contract to cure or to achieve a particular result); *Van Zee*, 445 N.W.2d at 36–37 (liability for breach of a contract to cure or to achieve a particular result must be established by "clear proof").

¶ 11.   The existence of a valid express contract presents a question of law we review de novo when, as here, the relevant facts are undisputed. *See Piaskoski & Assocs. v. Ricciardi*, 2004 WI App 152, ¶ 7, 275 Wis. 2d 650, 686 N.W.2d 675. In a breach of contract case, the plaintiff must establish the existence of the contract. *See Household Utilities, Inc. v. Andrews Co., Inc.*, 71 Wis. 2d 17, 28, 236 N.W.2d 663 (1975). Whether there is clear proof of the contract depends on what was said by the physician and the circumstances under which it was said. *Guilmet v. Campbell*, 188 N.W.2d 601, 606–07 (Mich. 1971) (superseded by statute).

¶ 12.   As noted above, VanHierden's contention that Dr. Swelstad contracted to cure his pain is based on the following statement:   "we're going to get rid of your pain and we're going to get you back to work."[3] We need not decide whether this statement, viewed by itself, constitutes a contract to cure because there is a very

[3] Dr. Swelstad argues that the parol evidence rule precludes consideration of the alleged promise to cure statements which were made prior to the date upon which VanHierden executed the consent to surgery form. For purposes of our analysis, however, we assume without deciding that the parol evidence rule does not bar consideration of Dr. Swelstad's statements.

significant additional fact: VanHierden signed a form acknowledging that no particular result was promised.

¶ 13. After the doctor made the oral statement, VanHierden signed the consent to surgery form. By signing this form, VanHierden specifically acknowledged that he was "aware that the practice of medicine and surgery is not an exact science and . . . that no guarantees have been made to [him] concerning the results of the operation or procedure(s)." In light of this express acknowledgement, it would be unreasonable to conclude that VanHierden had been given and relied upon a guarantee concerning the result of the surgery. Accordingly, we conclude that summary judgment was properly granted in favor of Dr. Swelstad.

## CONCLUSION

¶ 14. For the reasons discussed above, we affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.