COURT OF APPEALS
DECISION
DATED AND FILED

April 6, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP427**

STATE OF WISCONSIN

Cir. Ct. No.  2021CV154

IN COURT OF APPEALS
DISTRICT IV

ROBERT KARL AND DENISE KARL,

    PLAINTIFFS-APPELLANTS,

 V.

ACCESS TITLE INC., SONYA KIRSCH AND GEORGE WILBUR,

    DEFENDANTS-RESPONDENTS,

TATIANA KATARA,

    DEFENDANT.

APPEAL from an order of the circuit court for Grant County: CRAIG R. DAY, Judge. *Affirmed.*

Before Blanchard, P.J., Fitzpatrick, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Robert Karl and Denise Karl appeal a circuit court order granting a motion filed by Access Title, Inc., Sonya Kirsch, and George Wilbur to dismiss the Karls' amended complaint for failure to state a claim upon which relief can be granted pursuant to WIS. STAT. § 802.06(2)(a)6. (2021-22).[1] The case involves a real estate transaction, in which:  the Karls were the buyers; Tatiana Katara, the seller; Access Title, the closing title company; Kirsch, an employee of Access Title; and Wilbur, an attorney representing Katara.  The Karls sued the defendants Access Title, Kirsch, and Wilbur—as well as Katara[2]—alleging multiple claims listed in the discussion below.  Access Title and Kirsch, represented by the same counsel, filed a motion to dismiss all causes of action against them and Wilbur filed a motion to dismiss all causes of action against him. The circuit court granted the motions to dismiss all claims against the defendants for failure to state claims upon which relief can be granted.  We affirm based on our conclusion that the Karls failed to allege facts sufficient to state claims against the defendants.

¶2      We now summarize pertinent allegations contained in the amended complaint, which we assume to be true for purposes of this appeal.  After that, we describe the legal standards governing motions to dismiss and our review of circuit court orders on those motions.  We then introduce each dismissed claim in turn

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Katara is not a party to this appeal.  When we use the phrase "the defendants," we are referring collectively to Access Title, Kirsch, and Wilbur, but not to Katara.

and explain our conclusions before concluding by addressing additional arguments advanced by the Karls.[3]

*Complaint Allegations*

¶3      The Karls' operative complaint alleges that in January 2019, the Karls entered into an offer to purchase property in Grant County from Katara, setting a closing date for April 1, 2019. The Karls intended to operate a farm on this property.

¶4      The closing was held at the offices of Access Title, although Katara and Attorney Wilbur attended remotely from another location.

¶5      The Karls financed the purchase through the Farm Service Agency ("the lender"). In advance of the closing, a representative of the lender informed the Karls that the representative would let the Karls know on the closing day whether, as the complaint puts it, "closing would happen at 2:00 PM or 3:00 PM." On the day of the closing, the representative informed the Karls that "they should be to [the] closing at 1:00 PM," and the Karls responded that they would not be able to arrive before 2:00 PM.

---

[3] The Karls were represented by counsel in the circuit court, but are pro se on appeal. This court strives to discern possible arguments that pro se litigants may intend to make in order to reach the merits of an appeal and we do not lightly decide that briefing is inadequate. Here, we have had mixed success in discerning some possible arguments by the Karls, including numerous assertions and references that appear to be irrelevant to any possible basis to reverse the circuit court based on our de novo review. Any argument that we do not specifically address is denied because it is inadequately briefed and lacks discernable merit. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we need not consider inadequately developed arguments).

¶6      The Karls arrived at Access Title on the day of the closing at about 2:15 PM.  Access Title employee Kirsch was not present.  The Karls were told that Kirsch was at a bank, wiring to an account controlled by Wilbur the loan proceeds for the transaction described in the offer to purchase.

¶7      Kirsch arrived at about 2:30 PM and told the Karls that Wilbur wanted the funds that day, with a 3:00 PM deadline for the funds to be wired.

¶8      Kirsch wired the loan proceeds to Wilbur before the closing occurred, and Wilbur "could see the funds," even though "[t]he Karls did not authorize the purchase proceeds being delivered to Katara or her agent prior to closing."

¶9      Both the Karls and Katara objected to aspects of the Settlement Statement and Closing Disclosure.  Katara indicated orally and in writing that she was prepared to "walk away" from the transaction.  "The Karls also wished to terminate the purchase transaction due to the condition of the property and issues with the Settlement Statement."

¶10     Kirsch indicated that she would have to "undo" the wire transfer of the loan proceeds.  Denise Karl asked Kirsch how long it would take Kirsch "to reverse the wire transfer" and Kirsch "would not answer the question."

¶11     The Karls executed the closing documents.  They did this after Kirsch pointed out to the Karls that, under the seller's Settlement Statement, Katara and not the Karls was responsible for certain charges, the lender's representative made unspecified "statements," and Kirsch "push[ed]" the Karls to close the transaction.  The Karls executed the closing documents believing that it

was "too late" to terminate the transaction because the loan proceeds had already been transferred to Wilbur.

¶12    After the closing, the Karls discovered problems at the property, such as burst pipes.

¶13    The complaint further alleges the following:

> The Karls immediately demanded re[s]cission of the purchase contract and return of their purchase money.  On April 2, 2019, Katara agreed to this demand and a contract of re[s]cission was formed.  Both Katara and counsel for the Karls contacted Kirsch and informed her of the re[s]cission.  Kirsch in turn contacted counsel for Katara's mortgage holder to inform him of the same….
>
> Later on April 2, 2019, Attorney Wilbur sent an email to counsel for the Karls denying that an agreement to rescind the contract existed, and refused to return the funds that were delivered to his office….
>
> Despite the re[s]cission agreement and the Karls' demands for return of their purchase funds, Katara and Wilbur did not rescind the purchase agreement or return the purchase money.

*Legal Standards*

¶14    We review de novo a circuit court decision resolving a motion to dismiss a complaint based on the argument that it does not state a claim upon which relief can be granted. ***Data Key Partners v. Permira Advisers LLC***, 2014 WI 86, ¶17, 356 Wis. 2d 665, 849 N.W.2d 693.  "When we review a motion to dismiss, factual allegations in the complaint are accepted as true for purposes of our review." *Id.*, ¶18.  "[A] court cannot add facts in the process of construing a complaint" and "legal conclusions stated in the complaint are not accepted as true, and they are insufficient to enable a complaint to withstand a motion to dismiss." *Id.*, ¶19.

*Claims*

¶15    **First claim (all defendants):**   Violations of the federal Truth in Lending Act, citing 12 C.F.R. §§ 1026.19(f)(1)(ii), 1026.19(f)(2) (2022) and 15 U.S.C. § 1640.  As part of their arguments, the defendants accurately point out that in the circuit court the Karls explicitly agreed the court should dismiss the first claim, as the court confirmed on the record, and there was no objection by the Karls.  Further, the Karls fail to dispute this point in their reply brief on appeal. *See Fischer v. Wisconsin Patients Comp. Fund*, 2002 WI App 192, ¶1 n.1, 256 Wis. 2d 848, 650 N.W.2d 75 ("An argument asserted by a respondent on appeal and not disputed by the appellant in the reply brief is taken as admitted.").

¶16    **Second claim:**   Breach of contract.  On its face, the second claim does not allege any conduct by the defendants (only conduct by Katara).  The circuit court confirmed this obvious fact on the record, without objection by the Karls.  The Karls appear to acknowledge on appeal that this claim was properly dismissed against the defendants.

¶17    **Third claim (Kirsch):**   Breach of the duty of good faith and fair dealing.  In pertinent part, Kirsch relies on legal authority for the proposition that one element of the third claim is the existence of a contract between the Karls and Kirsch from which arose Kirsch's obligations to assist in the real estate transaction in good faith.  *See Metropolitan Ventures, LLC v. GEA Assocs.*, 2006 WI 71, ¶¶35-36, 291 Wis. 2d 393, 717 N.W.2d 58 ("[C]ontracts impose on the parties" a duty of good faith, and "[t]he duty of good faith arises because parties to a contract, once executed, have entered into a cooperative relationship." (emphasis omitted)), *clarified per curiam on denial of reconsideration*, 2007 WI 23, 299 Wis. 2d 174, 727 N.W.2d 502; *see also VanHierden v. Swelstad*, 2010 WI App

6

16, ¶11, 323 Wis. 2d 267, 779 N.W.2d 441 (the party claiming breach of a contractual duty "must establish the existence of the contract" from which the duty arises). Operating from this premise, which is not contested by the Karls, Kirsch argues that the complaint does not include facts from which one could reasonably infer a contractual relationship between the Karls and Kirsch or her employer that could have been breached by any alleged conduct of Kirsch on the day of the closing. The Karls fail to come to grips with this point in any way. They end up relying solely on WIS. STAT. § 421.108. One problem with this is that § 421.108 addresses "[e]very agreement or duty within chs. 421 to 427," the Wisconsin Consumer Credit Act; and the Karls have no reply when Kirsch points out that, pursuant to WIS. STAT. § 421.202(10), this act does not apply to a transaction that was "primarily for an agricultural purpose," namely, the purchase of land for the purpose of operating a farm.

¶18     **Fourth claim:** Unjust enrichment. On its face, the fourth claim does not allege any conduct by the defendants (only by Katara). The circuit court confirmed this obvious fact on the record, without objection by the Karls. The Karls appear to acknowledge on appeal that this claim was properly dismissed against the defendants.

¶19     **Fifth claim (all defendants):** Conversion. The elements of a common law conversion claim are (1) intentional control or taking of property belonging to the plaintiff (2) without the plaintiff's consent (3) resulting in serious interference with the plaintiff's right to possess the property. *H.A. Friend & Co. v. Professional Stationery, Inc.*, 2006 WI App 141, ¶11, 294 Wis. 2d 754, 720 N.W.2d 96. This claim founders for lack of allegations regarding the first element, which requires that the property at issue belong to the plaintiff. The Karls now argue that the complaint alleges that "Kirsch/Wilbur" intentionally

7

controlled the loan proceeds, which the Karls contend belonged to them when they were transferred to Wilbur's account allegedly without authorization from the Karls. However, as the defendants point out, even construing all factual inferences in the complaint in favor of the Karls, the Karls did not have possession or immediate right to possession of the loan proceeds when they were wired to Wilbur's account because the Karls had not yet executed the loan documents. Based on all of the allegations in the complaint, the only reasonable inference was that the loan proceeds belonged to the lender before the closing occurred, and that the Karls then executed the loan documents knowing that the seller's attorney had gained control over the loan proceeds before execution. Further, in any case, after the defendants make this argument, the Karls fail to address its substance, conceding it.[4]

¶20 **Sixth claim (all defendants):** Civil conspiracy to convert. The defendants point out that, whatever else is required to establish a conspiracy to convert, it must depend on a theory of conversion that has a factual basis in the complaint. We have just explained that the Karls silently concede that such a theory is absent from the complaint. Further, the Karls fail to address this point regarding the conspiracy claim, also conceding it.

---

[4] The Karls assert that the conversion claim cannot be dismissed because the specific issue of whether the Karls were entitled to possession of the loan proceeds when Kirsch transferred them to Wilbur's account is one that must be submitted to a jury in order to satisfy WIS. STAT. § 805.01(1) (right to trial by jury), Article I, § 5 of the Wisconsin Constitution, which provides that the right of trial by jury "shall remain inviolate," and the right-to-remedy provision of Article I, § 9. Assuming without deciding that the Karls preserved this argument by presenting it to the circuit court or that they did not need to do so, we reject it as undeveloped. It is sufficient to note that the Karls completely ignore the authority of a circuit court to dismiss a complaint for failure to state a claim pursuant to WIS. STAT. § 802.06(2)(a)6. We can see no basis for the Karls' argument, but in any case we would have to develop it in order to address it properly.

8

¶21 **Seventh claim (all defendants):** "Damages pursuant to violation of WIS. STAT[]. §§ 943.20 and 895.446." Section 943.20 is Wisconsin's criminal theft statute. Section 895.446 provides for statutory civil theft claims. The Karls' theory of the seventh claim, as best we can discern, is that the defendants committed acts that constitute criminal theft by participating in the wiring of the loan proceeds to Wilbur's account. Access Title and Kirsch argue in pertinent part that, so far as the complaint alleges,

> The Karls simply paid the purchase price they agreed to pay to receive the Property they agreed to purchase. There was no theft by Access Title or by Kirsch. In fact, if Access Title and Kirsch had not wired the loan proceeds before the bank's 3:00 p.m. wire cutoff, then the Karls would have presumably been in breach of contract for failing to close by April 1.
>
> [In addition,] if there was anything objectionable about the wiring of the loan proceeds prior to closing, the Karls waived any "theft" claim by proceeding to close the transaction with full knowledge that the funds had been wired. When issues arose at the closing, the Karls concede [in the complaint that] they were told by Kirsch that she would have to "undo" the wire transfer.… The Karls had not yet even signed any loan documents legally obligating them to repay the loan proceeds.… However, while represented by counsel and with their lender present at closing, the Karls elected to close on the transaction and sign their loan documents.… In doing so, [the] Karls ratified the wiring of the funds and waived any claim that the funds had been stolen by "theft," as they now allege.

(Citations to the complaint omitted.) Wilbur makes similar points. The Karls' principal brief on appeal does not contain a developed argument on these points and there is not a single reference to "theft" or "943.20" in their reply brief on appeal. The Karls in effect concede the points made by the defendants.

¶22 **Eighth claim (all defendants):** "Punitive damages." This is not a standalone claim, as the circuit court noted without objection by the Karls. *See*

9

*Hansen v. Texas Roadhouse, Inc.*, 2013 WI App 2, ¶21, 345 Wis. 2d 669, 827 N.W.2d 99 ("Punitive damages are a remedy, not a cause of action.").

¶23 **Ninth and Tenth claims (Access and Kirsch):** Negligent misrepresentation and intentional misrepresentation. Both claims alleging a type of misrepresentation must be dismissed for at least the following reason: the complaint fails to state with particularity the content of one or more specific misrepresentations. *See* WIS. STAT. § 802.03(2) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake *shall be stated with particularity*." (emphasis added)); *Friends of Kenwood v. Green*, 2000 WI App 217, ¶14, 239 Wis. 2d 78, 619 N.W.2d 271 ("particularity" in this context requires "specification of the time, place, *and content* of an alleged false misrepresentation" (emphasis added)). It is possible to glean from the complaint that these claims involve some aspect or aspects of what the complaint refers to as "the Settlement Statement and Closing Disclosure." However, it is entirely unclear from the complaint what specific alleged statement or statements of Access or Kirsch was a misrepresentation. Further, both in the Karls' principal brief and again in their reply brief, after Access and Kirsch point out this problem in their appellate brief, the Karls fail to identify any particular representation, in effect conceding the point.

¶24 **Eleventh claim (Kirsch):** Negligence. Generally, to prove negligence, a plaintiff must show: "'(1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury.'" *Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 260, 580 N.W.2d 233 (1998) (quoted source omitted). Putting aside a lack of clarity in the complaint about what duty of care Kirsch might have breached, the eleventh claim must be dismissed for at least

10

the reason that the complaint fails to, as it must, "plead what actual loss or damage [the Karls] suffered as a result of" Kirsch's breach of a duty. *See Midway Motor Lodge of Brookfield v. Hartford Ins. Group*, 226 Wis. 2d 23, 35-36, 593 N.W.2d 852 (Ct. App. 1999). Similar to the fatal defect in the complaint in *Midway*, the complaint here merely asserts a claim to "the Karls['] foreseeable damages in an amount to be determined by the trier of fact." In their briefing on appeal, the Karls direct us to the following three allegations in the complaint, as purported support for a claim of loss or damage suffered as a result of a breach of a duty by Kirsch: (1) "The funds of the FSA loan are secured by a lien on, *inter alia*, other real property which was owned by the Karls prior to the closing"; (2) "Without executed loan or closing documents, Kirsch released funds to the seller, significantly damaging the interests of the Karls as to the Property, closing, their mortgage funds, and other property they already owned, which now has a lien on it"; and (3) "Kirsch closed the transaction with inaccurate settlement statements and/or permitted the settlement statements to be unilaterally modified by the seller without the consent of the Karls." We do not discern from these two references a factual basis that could support a demand for damages on this claim. At one point, the Karls state, "the property disputed in this matter is the Karls['] loan funds and their property that incurred a lien," but they fail to explain how one could reasonably infer from the complaint that all of the loan proceeds and property under an unidentified lien could be "an actual loss or damage as a result of the injury" caused by alleged negligence of Kirsch.

¶25 The complaint contains the specific allegation that the Karls' alleged damages include their coming to own property that "they would not have if they had not been forced to purchase." But, as Kirsch now points out and as summarized above, the Karls' complaint alleges that Kirsch told the Karls that

Kirsch "would have to 'undo' the wire transfer" in order for the parties to terminate the transaction. This clearly embodies the premise that it was possible to terminate the transaction—or at least to "undo" the money transfer and allow the Karls to take whatever steps they wanted to take to try to unwind the transaction. Thus, according to the allegations in the complaint, the Karls were not "forced to purchase," as they now argue; they elected to proceed with the transaction to buy this property and not take Kirsch up on the offer to "undo" the transfer.

¶26 **Twelfth claim (All defendants):** Tortious interference with contract. "The elements of a claim for tortious interference with a contract are: (1) the plaintiff had a current or prospective contractual relationship with a third party; (2) the defendant interfered with that contractual relationship; (3) the interference was intentional; (4) a causal connection exists between the defendant's interference and the plaintiff's damages; and (5) the defendant was not justified or privileged to interfere." *Wolnak v. Cardiovascular & Thoracic Surgeons of Cent. Wis., S.C.*, 2005 WI App 217, ¶14, 287 Wis. 2d 560, 574, 706 N.W.2d 667. The complaint here alleges two categories of tortious inference: (1) by Wilbur, in interfering with an alleged "contract of re[s]cission" between Katara and the Karls; and (2) by Kirsch, in interfering with the contractual relationship between the Karls and the lender, which the Karls submit included an intention that the loan proceeds would be distributed "only upon execution of a note and other loan documents and closing documents."

¶27 We conclude that both categories of claims are properly dismissed for at least the following reason: failure of the complaint to state a basis for "a causal connection" "between the defendant's interference and the plaintiff's damages." Regarding the allegation that Wilbur interfered with an alleged

"contract of re[s]cission" between Katara and Karls, we resolve this issue based on our inability to discern in the complaint a causation of damages predicated on Wilbur simply clarifying that his client Katara did not accept an offer to rescind the transaction. It is the same with respect to the allegation that Kirsch interfered with an alleged contractual agreement between Karls and the lender regarding the timing of the transfer of loan proceeds; the complaint does not indicate what damages were caused by the timing of the transfer of the loan proceeds. Further, the Karls concede the lack of "a causal connection" regarding each alleged interference by failing on appeal to reply to arguments to this effect made by the defendants.

¶28 **Thirteenth claim (Kirsch):** Breach of fiduciary duty. A claim for breach of fiduciary duty requires proof that: "(1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that duty; and (3) the breach of duty caused the plaintiff damage." *Berner Cheese Corp. v. Krug*, 2008 WI 95, ¶40, 312 Wis. 2d 251, 752 N.W.2d 800. The allegation here is that Kirsch had a fiduciary duty to the Karls and she breached that duty by transferring the loan proceeds to Wilbur's account when she did. We assume without deciding that Kirsch, in her role as a title company employee performing closing services, owed a fiduciary duty to the buyers. On the thirteenth claim, as with others addressed above, we conclude that the complaint fails to allege any damages to which the Karls could be entitled. Further, after Kirsch makes this point in her appellate brief, the Karls do not address the issue in their reply, and in their principal brief they make the same references that we have concluded do not coherently describe damages.

¶29 **Fourteenth claim (Kirsch):** "Constructive fraud." In making this claim, the complaint incorporates all prior allegations and then states: "Kirsch,

13

standing in a fiduciary relationship to the Karls, has engaged in a constructive fraud by failing to disclose material facts to the Karls prior to their executing the closing documents, thereby causing the Karls to suffer damages in an amount to be determined by the trier of fact." It is unclear what a viable civil claim of constructive fraud could consist of under Wisconsin law. But assuming without deciding that such a claim is viable in Wisconsin's courts, the fourteenth claim fails here for at least the following reasons, as discussed above regarding other claims: fraud or mistake is not stated with particularity and no clear theory of damages may be discerned from the complaint.

¶30 **Fifteenth claim (Kirsch):** Fraud in the inducement. The elements of a claim of fraudulent inducement to enter a contract are "a statement of fact that is untrue, made with the intent to defraud, and for the purpose of inducing the other party to act on it, which the other party relies on to his or her detriment, where the reliance is reasonable." *Kailin v. Armstrong*, 2002 WI App 70, ¶31, 252 Wis. 2d 676, 643 N.W.2d 132. The complaint alleges that Kirsch made "false representations" "to induce" the Karls "into entering into executing the closing documents." The complaint fails to provide the contents of any false representations and therefore they are not stated with particularity. Further, as Kirsch now points out, Kirsch's conduct at the closing *in April 2019* could not have induced the Karls to enter into the offer to purchase *in January 2019*, which is the contract that obligated the Karls to purchase the property. *See id.*, ¶29 (acceptance of an offer to purchase creates a binding contract, so that while the sale does not occur until legal title is transferred at closing, the rights and obligations of buyer and seller are fixed in the offer to purchase). The Karls concede this point by failing to address it in their reply brief on appeal.

14

¶31   **Sixteenth claim:**   Violation of WIS. STAT. § 100.18.   On its face, this claim does not allege any conduct by the defendants (only by Katara).   The circuit court confirmed this obvious fact on the record, without objection by the Karls.   The Karls do not refer to § 100.18 on appeal, conceding the point.

¶32   We now address arguments that the Karls may intend to make that are not already addressed above and that are clear enough to merit attention.

¶33   The Karls make a series of arguments based on the false, implied premise that we are reviewing a discretionary decision of the circuit court to which we give deference.   In each case, the argument misses the mark because it ignores our standard of review, which is de novo.

¶34   First, the Karls assert that the circuit court made its rulings based partly on the false understanding that Kirsch transferred the loan proceeds to Wilbur's attorney trust account, as opposed to a personal account controlled by Wilbur.   Given our de novo review, it does not matter what understanding the circuit court did or did not have.   Further, the Karls fail to develop an argument that, even if Wilbur violated SCR 20:1.15(b)(1) by failing to hold in trust funds belonging to a client or third party, this could have a bearing on any of the issues that we have resolved above as to each claim.   Finally, we agree with the defendants that the only reasonable inference from the complaint is that Wilbur would have acted as an attorney is ethically obliged to act, given that the complaint provides no reason to think otherwise and the clarity and prominence of the attorney trust account rule.

¶35   Second, the Karls purport to raise an issue regarding the fact that the circuit court said, in an aside comment, "and I note [that the Karls] were represented by counsel in connection with this" real estate transaction.   Again,

however, any misunderstanding by the court does not matter under our standard of review. Further, again, the Karls fail to develop an argument that the fact of representation would be relevant to any issue that we have resolved above. Beyond all that, there was a sound basis for the court's comment. As the defendants argue, the Karls' amended complaint attached documents reflecting that an attorney represented them and documents attached to a complaint may be relied upon in deciding a motion to dismiss. *See Soderlund v. Zibolski*, 2016 WI App 6, ¶¶37-38, 366 Wis. 2d 579, 874 N.W.2d 561 (2015) (discussing the "incorporation-by-reference" doctrine). The Karls do not draw our attention to any other references in the complaint or to its attachments that would undermine the validity of the court's comment.[5]

¶36     Third, the Karls' refer to the fact that the circuit court made the observations that Kirsch, in her role in handling the loan proceeds, "probably [did] have a fiduciary duty to … participants [in the transaction] based on the general principles of fiduciary duty" but that she "was not a contractual escrow agent." In addition to the fact that our review is de novo, the Karls do not develop an argument that Kirsch was, according to the complaint allegations together with reasonable inferences, in fact "a contractual escrow agent" and that for this reason any particular claim should not be dismissed, despite our analysis above.

¶37     Fourth, the Karls state that it was "error for the Circuit Court to think that it is acceptable practice to send loan money before closing occurs." Again, it

---

[5] The Karls assert, without reference to the contents of the complaint or its attachments, that the attorney who assisted them with the transaction did not attend the closing. But even if we were to assume that this allegation of fact were included in the complaint, it would not change our analysis regarding any claim.

16

is irrelevant what the circuit court thought. Further, the Karls fail to develop an argument that any of their claims should not be dismissed on the grounds that we delineate above because it is not, as the Karls put it, "acceptable practice" for a title company representative to transfer loan proceeds to the seller's attorney before the moment of closing.

¶38 Fifth, the Karls state that the circuit court erroneously "determined that even though the loan funds had already been disbursed, it was not too late for the parties to walk away." Again, the circuit court's view is irrelevant. Further, as we have already explained, the complaint describes a scenario in which the Karls decided against having Kirsch "undo" the money transfer and then taking whatever steps they wanted to take to try to unwind the transaction, perhaps with the assistance of the attorney who represented them in connection with the transaction. The complaint alleges that the Karls decided to proceed with the transaction and the complaint does not suggest that anyone informed the Karls that it was, as they now put it, "too late for the parties to walk away."

¶39 In a separate vein, the Karls argue that the circuit court "pierced the veil of judicial impartiality." This argument has five parts, none of which have merit. One defect shared by all five subparts is that the Karls fail to explain how they could have been prejudiced by any alleged impartiality, particularly in light of our de novo standard of review. We now summarize the arguments and our further conclusions on this issue.

- **Reference to potential WIS. STAT. § 802.05 motion**. The Karls fault the court for referring to the fact that counsel for Access Title and Kirsch said at a hearing that counsel would consider filing a motion for sanctions under § 802.05 for initiating or continuing a frivolous action if the Karls filed another version of the complaint that was frivolous. We have reviewed the record and conclude that the court's reference was completely proper; the court was simply noting counsel's statement for

17

clarification purposes. The court certainly did not "threaten" sanctions, as the Karls argue.

- **"Strategic advice."** The Karls characterize the court as "providing improper strategic advice" to the defendants. We have reviewed the cited passages and it is obvious that the court was merely explaining its reasoning in an open and impartial manner.

- **Reliance on submissions**. The Karls assert that the court "erroneously relied on the briefs," but it is sufficient to note that this completely misunderstands the basic nature of legal argument and neutral judicial decision making.

- **Reference to prior case**. The Karls fault the circuit court for noting in its final order that the Karls had filed a similar action against the same defendants one year earlier, which the plaintiffs moved to voluntarily dismiss after the defendants filed a motion to dismiss for failure to state a claim. We fail to see any error of any kind in the court's reference.

- **Separate decision regarding Katara**. The Karls attempt to suggest that the court displayed bias by denying their motion for default judgment against Katara but dismissing the Karls' claims against the defendants. These were two separate decisions and the Karls fail to develop an argument that there is a relationship between the decisions that even suggests, much less establishes, bias.

## CONCLUSION

¶40 For all of these reasons, we affirm the circuit court order.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.