In the MATTER OF COSTS AND ATTORNEYS FEES IN
Kathleen JENSEN et al. v. David D. McPHERSON,
M.D. et al:

Attorney Lee P. FORMAN, Appellant,

v.

David D. McPHERSON and Lakeland Medical
Center, Respondents.

Court of Appeals

*No. 03–2505. Submitted on briefs May 5, 2004.—Decided
June 30, 2004.*

2004 WI App 145

(Also reported in 685 N.W.2d 603.)

· On behalf of the appellant, the cause was submitted on the briefs of *Ross Anderson* and *James P. Denis, III* of *Whyte Hirschboeck Dudek S.C.*, Milwaukee.

On behalf of the respondents, the cause was submitted on the brief of *Curtis C. Swanson* and *David J. Pliner* of *Corneille Law Group, LLC*, Madison.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. ANDERSON, P.J. Attorney Lee P. Forman appeals the decision and order of the trial court granting Dr. David D. McPherson and Lakeland Medical Center's motion for mistrial and imposing sanctions in the form of costs and attorneys' fees. Forman argues that the trial court failed to engage in "any meaningful consideration" of alternative remedies to a mistrial. Forman also argues that the proof submitted by Dr. McPherson and Lakeland "was completely insufficient to sustain [the specific amount awarded] because the affidavits and bills of costs contained opinions that are conclusory and incomplete." Forman argues that he was entitled to discovery with regard to the fees and costs. Finally, Forman argues that Dr. McPherson's and

Lakeland's motions for fees and costs were untimely under WIS. STAT. § 806.06 (2001–02).[1]

¶ 2. We reject Forman's claim that the defendants' motions were untimely. We uphold the trial court's grant of a mistrial and its award of costs and attorneys' fees.[2] However, we agree with Forman that the proof provided by the defendants to sustain the specific amount awarded in costs and attorneys' fees was insufficient. We therefore remand this issue to the trial court with directions to instruct Dr. McPherson's and Lakeland's attorneys to provide more detailed time records and evidence to support the amount claimed owed. Finally, given these remand directions, Forman's discovery argument is a nonissue because the information he seeks will now be provided upon remand.

¶ 3. In early 1997, acting on behalf of Kathleen and Bradley Jensen, Forman filed suit against Dr. McPherson and Lakeland alleging medical malpractice (No. 97CV000704).[3] The Jensens claimed that their minor son Erik was rendered a paraplegic after suffering a spinal cord tear and permanent injury while in utero due to the allegedly negligent efforts of Dr. McPherson to reposition Erik in the womb with a procedure called a "version."

¶ 4. One of the witnesses identified by Forman was pediatric neurologist Dr. Richard Jacobson, Erik's treating physician.

---

[1] All references to Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] The court also ordered Forman to pay the fees and costs of the Wisconsin Patients Compensation Fund, an original defendant; the Fund's claim was subsequently resolved and is not at issue.

[3] *Jensen v. Wis. Patients Comp. Fund*, No. 97CV000704.

¶ 5. In May 1998, the trial court entered a scheduling order, which stated in relevant part:

> [Please note: T]he parties in submitting their experts to oral examinations certify their experts are prepared and their opinions complete unless a disclosure is made at the deposition. Parties have a continuing duty to disclose developing or changing opinions of experts.

¶ 6. The defendants' attorneys deposed Dr. Jacobson on March 17, 1999.[4] At deposition, the following exchange took place between the defense attorneys and the doctor:

---

[4] This court notes that the appendix attached to Forman's appellate brief contains a partial transcript of Dr. Jacobson's deposition. To the best of our knowledge, the appellate record contains only a partial transcript of the deposition and does not even contain some of the relevant portions provided in Forman's appendix. Forman's appellate brief refers extensively to Dr. Jacobson's deposition. Consequently, we remind Forman's appellate counsel that an appellant's brief to this court must contain "a statement of facts relevant to the issues presented for review, with appropriate references to the record," WIS. STAT. § 809.19(1)(d), as well as an "argument on each issue," citing "parts of the record relied on," § 809.19(1)(e).

Forman's citations to his appendix do not conform to the rules of appellate procedure because they do not inform the court where the facts he asserts may be found in the record. *See Miesen v. DOT*, 226 Wis. 2d 298, 301 n.5, 594 N.W.2d 821 (Ct. App. 1999); *see also* WIS. STAT. § 809.19(1)(d), (e).

It is not this court's responsibility to sift and glean the record in extenso to find facts supporting Forman's argument. *See Miesen*, 226 Wis. 2d at 301 n.5. Rather, it is the appellant's responsibility to ensure completion of the appellate record and "when an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the trial court's ruling." *Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26–27, 496 N.W.2d 226 (Ct. App. 1993).

[Defense Counsel] Is it fair to state that you have no intention of offering any opinions in this case relating to the standard of care by obstetricians.

[Dr. Jacobson] Yes, that is correct, I do not intend to.

[Defense Counsel] And as far as the mechanism of injury, you have deferred that to someone else?

[Dr. Jacobson] As far as exactly how in utero manipulation would specifically damage the cord, as Dr. McClone has sort of—McClone has elaborated on it with these documents, I would defer that to him. But I do feel it's likely secondary to—it was the trauma to the cord that caused the injury as opposed to just a spontaneous infarction or a congenital malformation or an AV malformation.

. . . .

[Defense Counsel] I just want to make sure that I'm understanding the responses that you gave . . . earlier about whether or not if you come to trial as a witness you're going to have certain opinions.

. . . .

[Defense Counsel] So, summarily, I guess what I'm asking is if you were asked at this point to form an opinion for a jury to a medical probability as to when specifically this spinal cord lesion occurred and under what circumstances, before you gave that opinion would you want to read all of those records and depositions in detail as well as search the literature before reaching that definite conclusion? And I'm talking to a medical probability.

[Dr. Jacobson] Yes.

[Defense Counsel] Okay. And you haven't done that up to this point?

610

[Dr. Jacobson] No.

. . . .

[Defense Counsel] You haven't reviewed that material, and therefore you don't have an opinion to our legal standard of a medical probability because you'd want to see that material before as a scientist you'd want to reach that definite a conclusion?

[Dr. Jacobson] Yes, that's correct.

¶ 7. Forman also questioned Dr. Jacobson at the deposition and, in so doing, raised an issue that disturbed the defense:

[S]hould the instance come when you review the material and there is nothing new or different displayed by the material, would your opinions expressed here today remain the same?

The defense immediately raised its concern to this line of questioning:

Well, wait a minute. If you're going to—let's put our cards on the table. If you're going to send [Dr. Jacobson] stuff, then we would want to take another deposition of him and reserve the right to object to the manner in which he's been given information.

. . . .

[I]f [Dr. Jacobson is] going to get more documents and things to look at, in Wisconsin what is usually the course is that the lawyers get told that the doctor now has seen all these things that he didn't see before his deposition and then we have the opportunity to do something about that. Sometimes it's ask for another deposition.

611

¶ 8. Later, when Forman called Dr. Jacobson as a witness at trial, he elicited the following testimony which formed the basis for the defenses' subsequent motion for a mistrial:

[Forman] All right. Now, doctor, after all of your examinations of Erik and up until January 4, 1997, did you form an opinion as to the cause of Erik's injury?

[Dr. Jacobson] Yes, I did.

[Forman] Okay. Doctor, based upon a reasonable probability of medical certainty, do you have an opinion as to what caused the spinal cord injury to Erik Jensen?

[Dr. Jacobson] Yes, I do.

[Forman] What is your opinion?

[Dr. Jacobson] It's my opinion that the—that his lesion, his deficit, was caused by trauma to the spinal cord; and at the time I first saw him, I did not have any detailed information about—about what the circumstances of his birth were. But in reviewing all the information I had become available to me, it's my opinion that it was manipulation at some time during the birth process that caused the trauma to the spinal cord.

[Forman] Do you have an opinion, based upon a reasonable probability, that the version performed by Dr. David McPherson was the cause of this child's spinal cord injury?

[Defense Counsel] I object and I'd like to be heard on this.

[The Court] Well, first of all, your objection is sustained as to the form of the question. It's also leading. So rephrase the question.

[Forman] Thank you.

[Forman] What were the birth processes that you just referred to?

[Dr. Jacobson] Do you want me to tell you how I came to learn of what the circumstances were?

[Forman] Yes, sir, please.

[Dr. Jacobson] When I first saw him and saw the results of the MRI scan and we performed follow-up MRI scan showing a lesion in the cervical thoracic spinal cord, my first thought was that—what causes a spinal cord problem like this in a young child? And my first thought was trauma, and my second thought was some sort of vascular lesion.

So I asked Erik's mother what had happened during the delivery or whether he was born breech, because breech delivery is a common circumstance where the spinal cord would be injured. And she told me that he was breech and that they had tried a version and then he was delivered by C-section. And that led me to consider the possibility that something about one of those manipulations had been involved in the injury to the cord.

And I have since come to learn other aspects of the way Erik was positioned in the uterus and so forth, and looked at the literature on this particular circumstances, and I've concluded that of all the things that might have happened, that the version is the most likely event that injured his spinal cord.

[Forman] Thank you.

[Defense Counsel] Your Honor, I'd like that marked and reserve it for a later motion.

¶ 9. The defense objected, asking to be heard. Outside of the jury's presence, the defense argued that Dr. Jacobson's trial testimony on causation came as a

complete surprise. The defense complained that Forman did not give notice that he had given Dr. Jacobson material to review after the deposition. Additionally, they opined that they were never notified that the doctor's testimony at trial would be different than that at deposition.

¶ 10. Forman countered that he "discussed this in detail with both defense counsel that there would be specific allegations." He argued "[t]hey've had an opportunity at any given time to do any number of things and this does not come as a surprise to them."

¶ 11. Each of the defense attorneys categorically denied Forman's claim of disclosure. And, Forman did not produce documentation to prove otherwise.

¶ 12. The court then allowed both sides to voir dire Dr. Jacobson on the issue. Dr. Jacobson attested that the only information he had reviewed before his deposition was his own records. Dr. Jacobson verified that in his deposition testimony, he communicated that if he were going to give an opinion with respect to the timing of the injury, he would have wanted "to see the information about the version and the medical records surrounding the birthing process and that sort of thing."

¶ 13. Dr. Jacobson acknowledged that, after his deposition, Forman provided him with extensive additional materials to review: "a series of papers that dealt with the issue of fetal hyperextension in breech position and its association with spinal cord injury," articles about versions, transcripts of the depositions of the defense experts, a deposition of one of the plaintiff's experts, and the medical records related to the version. He agreed that the defense had not provided him any new information to review after his deposition.

¶ 14. Dr. Jacobson said that, after reviewing the material provided by Forman, he informed Forman of his opinion approximately one and one-half weeks before trial.

¶ 15. After hearing all the evidence, the trial court concluded that Dr. Jacobson had changed his deposition testimony and that the attorneys for the defense had not been properly notified, in violation of the scheduling order. The trial court and the parties then engaged in lengthy discussions about the options for dealing with Dr. Jacobson's surprise testimony. The court raised its concerns about whether striking the surprise testimony would cure its prejudice or exacerbate it:

> [Y]ou strike testimony in front of a jury, that underlines it, outlines it, puts it in quotations and sticks as an exclamation point at the end. That's the testimony they always remember, the ones you tell them to forget. That's the thing they'll remember.

¶ 16. Despite this risk, the defense initially asked that Dr. Jacobson's offending testimony be stricken because Dr. McPherson simply did not want to live with the case any longer. However, upon further consultation with their clients, defense counsel moved for a mistrial out of concern that the prejudice to the defense from the testimony could not be cured by striking it or by an instruction to the jury.

¶ 17. And, in fact, Forman, on behalf of the Jensens, did not oppose a mistrial. To the contrary, while defense counsel were still discussing the option of striking Dr. Jacobson's testimony, Forman effectively moved for a mistrial:[5]

---

[5] The trial court held that Forman, in fact, did move for a mistrial and did so before the defendants.

[Forman] Well, if there's been such a reversible error made right now, I don't want to try the case and then have to go up on a dozen different appeals . . . . So a mistrial at this point would not, you know—I assume would be assessed costs but would not be improper.

. . . .

[Forman] Talking about a fatal defect caused by Dr. Jacobson, then let's certainly have our mistrial. So those are my positions on it.

. . . .

[Forman] That was the—If you're going to mistry the case, mistry it on that error, mistry it. If there isn't that error created and it's just a question specifically of the last thing he said, I still think that I have a right to place that in . . . . But to strike Dr. Jacobson's testimony is not the correct thing.

¶ 18. Subsequently, after defense counsel also moved for a mistrial, the court requested Forman's input and he stated: "Whatever your Honor pleases, under the circumstances, if you think this is correct."

¶ 19. The court then ordered:

I'm going to grant the mistrial because I think you've made such a mess out of this, Mr. Forman, that this case can't even go forward. Your behavior here is unbelievable. It's reprehensible. And your lack of preparation for this trial and your inability to play within the rules has—it's created every one of these problems.

The mistrial will be granted. I will assess costs against you, Mr. Forman, and I'll expect a motion with regard to that, an affidavit as to what the costs actually are.

¶ 20. Although Forman objected to certain terms imposed by the court as part of the mistrial order (*e.g.*,

that the pleadings of all parties were closed), and although he denied that he himself had initially moved for a mistrial, he never objected to the grant of a mistrial or to an award of costs on the record.

¶ 21. The court then issued a detailed Findings of Fact and Order on November 9, 1999, summarizing the events and expressly finding:

> The new testimony by Dr. Jacobson was prejudicial to the defense in that it was given by a treating pediatric neurologist, it was a critical element of plaintiff's case, and it did not allow defense counsel time to prepare to cross-examine the witness.
>
> The prejudice created by the conduct of Attorney Forman cannot be adequately corrected by an instruction to the jury.

¶ 22. Shortly thereafter, without notice or an opportunity to be heard, the trial court sua sponte entered an order rescinding Forman's permission to appear pro hac vice as counsel for the Jensens. *Jensen v. Wis. Patients Comp. Fund*, 2001 WI 9, ¶ 9, 241 Wis. 2d 142, 621 N.W.2d 902. The order cited SCR 10.03(4) and stated that Forman "has by his conduct manifested incompetency to represent a client in a Wisconsin court and has not abided by the code of professional responsibility and the rules of decorum of the Court." *Jensen*, 241 Wis. 2d 142, ¶ 9.

¶ 23. Forman filed a motion for reconsideration, reasserting that Dr. Jacobson's trial testimony was consistent with his deposition testimony. *Id.*, ¶ 10. He argued that the trial court's order deprived him of the right to practice his profession and deprived the Jensens of their right to counsel of their choice. *Id.* He also argued that the order had been entered without notice or an opportunity to respond. *Id.* The trial court en-

tered its written findings of fact and order granting the mistrial, but did not specifically address Forman's motion for reconsideration of the revocation of his pro hac vice status. *Id.*

¶ 24. We granted leave to appeal the narrow question of whether there is a right to notice and an opportunity to be heard before a trial court withdraws an attorney's pro hac vice admission. *Id.*, ¶ 11. The Jensens and Forman argued that once an attorney has been admitted pro hac vice in a particular case, the attorney acquires a limited property interest that requires the due process protections of notice and an opportunity to be heard before that status may be revoked. *Id.*, ¶ 14. Upon review, we certified the question to the supreme court and certification was accepted. *Id.*, ¶ 11. The supreme court concluded that, for reasons of policy and sound judicial administration, attorneys should receive notice and some opportunity to respond before pro hac vice admission is revoked. *Id.*, ¶ 16. It did not reach the constitutional question. *Id.*

¶ 25. Three years later, in May 2003, just prior to resolving the second malpractice action (into which the original action had been consolidated[6]), the defendants filed motions and supporting affidavits to recover from

[6] In the original 1997 action, Forman had failed to join the child, Erik, as a party plaintiff and had failed to secure the appointment of a guardian ad litem. *Jensen v. McPherson*, 2002 WI App 298, ¶ 25, 258 Wis. 2d 962, 655 N.W.2d 487. The Jensens retained new counsel, who secured a guardian ad litem, and in 2001 filed a second lawsuit in Walworth county, (No. 01–CV-00411), adding Erik as a party. *Id.*, ¶¶ 4–6. They moved to consolidate the 1997 and 2001 cases. *Id.*, ¶ 6.

The trial court granted the motion for consolidation and denied the defendants' motion to dismiss the 2001 medical malpractice claim of Erik by his guardian ad litem. *Id.*, ¶ 1.

Forman their attorneys' fees and costs arising out of the mistrial. In response, Forman served defendants' trial counsel with subpoenas duces tecum, demanding discovery of records from counsels' files, including billing records. The defense moved to quash the subpoenas.

¶ 26. The trial court heard the motions on July 22, 2003. It held that the fees and costs sought by the defense were reasonable and entered orders awarding the defendants a total of $38,627.

¶ 27. Forman appeals the decision to grant the mistrial and the sanctions imposed against him awarding Dr. McPherson and Lakeland attorneys' fees and costs.

¶ 28. We first dispose of Forman's claim that the defenses' motions for fees and costs were untimely.

In 2002, the case came up to this court by grant of a leave to appeal. *Id.* The defendants appealed the trial court order denying a motion to dismiss the 2001 medical malpractice claim of Erik by his guardian ad litem. *Id.* They also appealed the trial court order granting the consolidation motion. *Id.* The defendants argued that under WIS. STAT. § 802.06(2)(a)10 (1999–2000), the 2001 action should have been dismissed on the grounds that the 1997 action was pending in Walworth county (No. 97–CV–00704) between the same parties for the same cause. *Jensen*, 258 Wis. 2d 962, ¶ 1. We disagreed and explained that Erik was not a party to the 1997 action because he was not properly named as a plaintiff in the complaint filed by his parents; additionally, Erik did not have a court-appointed guardian's services, as is required under WIS. STAT. § 803.01(3)(a), until after the 1997 action was declared a mistrial. *Jensen*, 258 Wis. 2d 962, ¶ 1. We affirmed the trial court's decision to deny the defendants' motion to dismiss, and we affirmed the trial court's order granting the Jensens' motion to consolidate the 1997 and 2001 actions. *Id.* We also upheld the trial court's discretionary decision to set a new scheduling order. *Id.*

Forman argues: "Because the case in which costs and attorneys' fees were awarded against Forman was terminated by the consolidation of the two cases on October 16, 2001, the Defendants were required [pursuant to Wis. Stat. § 806.06[7]] to file their bills of costs and affidavits within 30 days of that date." This argument is misguided and is rejected. Section 806.06 governs time limits when a "judgment" has been rendered. An order for consolidation is not a judgment. Unlike a judgment, an order for consolidation does not operate to "dispose[] of the entire matter in litigation as to one or more of the parties." *See* Wis. Stat. § 808.03(1).[8]

---

[7] WISCONSIN STAT. § 806.06(4) states in relevant part:

A judgment may be rendered and entered at the instance of any party either before or after perfection. If the party in whose favor the judgment is rendered causes it to be entered, the party shall perfect the judgment within 30 days of entry or forfeit the right to recover costs. If the party against whom the judgment is rendered causes it to be entered, the party in whose favor the judgment is rendered shall perfect it within 30 days of service of notice of entry of judgment or forfeit the right to recover costs.

[8] WISCONSIN STAT. § 808.03 provides in relevant part:

(1) APPEALS AS OF RIGHT. A final judgment or a final order of a circuit court may be appealed as a matter of right to the court of appeals unless otherwise expressly provided by law. A final judgment or final order is a judgment, order or disposition that disposes of the entire matter in litigation as to one or more of the parties, whether rendered in an action or special proceeding, and that is one of the following:

(a) Entered in accordance with s. 806.06(1)(b) or 807.11(2).

(b) Recorded in docket entries in ch. 799 cases.

(c) Recorded in docket entries in traffic regulation cases prosecuted in circuit court if a person convicted of a violation may be ordered to pay a forfeiture.

(d) Recorded in docket entries in municipal ordinance violation cases prosecuted in circuit court.

¶ 29. Next, we reject Forman's claim that the trial court erred in granting the defendants' motion for mistrial. The decision whether to grant a mistrial motion lies within the sound discretion of the trial court. *State v. Ross*, 2003 WI App 27, ¶ 47, 260 Wis. 2d 291, 659 N.W.2d 122, *review denied,* 2003 WI 91, 262 Wis. 2d 501, 665 N.W.2d 375 (Wis. June 12, 2003) (No. 02–0121–CR). The trial court must determine, in light of the whole proceeding, whether the claimed error was sufficiently prejudicial to warrant a new trial. *Id.* The trial court's decision on a motion for a mistrial will be reversed only on a clear showing of an erroneous use of discretion by the trial court. *See id.*

¶ 30. Forman argues that the trial court granted the defendants' motion for mistrial "without any meaningful consideration of alternative remedies."

¶ 31. We disagree. After the defense objected to Dr. Jacobson's testimony, the court excused the jury, allowed voir dire testimony from Dr. Jacobson, and allowed extensive argument from both sides before making its findings. The court then determined that Forman had violated its scheduling order by providing Dr. Jacobson with materials to review after his deposition, without advising the defendants' counsel. It additionally concluded that Dr. Jacobson's trial testimony was substantially different from his deposition testimony. Finally, it determined that the doctor's new opinion testimony regarding causation from Erik's treating pediatric neurologist was prejudicial to the defense because it was a critical element in the Jensens' case and the defense had not had a fair opportunity to respond.

¶ 32. Once the court made these fundamental findings, it turned to the question of how to handle the

situation. Again, the court allowed extensive arguments from counsel regarding the fairest way of dealing with the problem. Contrary to Forman's argument, the court did consider remedies less drastic than a mistrial. The court considered striking Dr. Jacobson's offending opinion testimony; it also entertained whether a curative jury instruction would remedy the prejudice. In the end, it concluded that no other alternatives were viable. We cannot say that this decision was clearly erroneous. Furthermore, from our reading of the record, it was made after allowing ample time for argument and thoughtful consideration of other alternatives.

██

¶ 33. Next, citing *Schultz v. Sykes*, 2001 WI App 255, ¶ 48, 248 Wis. 2d 746, 638 N.W.2d 604, Forman argues "before [the court] could impose sanctions personally against Forman, [it] was required to conclude that Forman either acted in bad faith or engaged in egregious conduct."

¶ 34. We disagree. Forman confuses the law. In *Schultz v. Sykes*, we cited to *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 275, 470 N.W.2d 859 (1991), and noted that the test for imposing the harsh sanction of *dismissal* is bad faith or egregious conduct. *See Schultz v. Sykes*, 248 Wis. 2d 746, ¶ 9. *Schultz v. Sykes* and *Johnson* involved dismissal of the plaintiff's lawsuit. Unlike *Schultz v. Sykes* and *Johnson*, this case does not involve dismissal of the plaintiff's lawsuit. Rather, the underlying sanction here was a mistrial, accompanied by a corresponding award of fees and costs. The Jensens were still able to seek redress for their injuries, and they did so.

██

¶ 35. We agree with defendants that *Schultz v. Darlington Mutual Insurance Co.*, 181 Wis. 2d 646, 656,

511 N.W.2d 879 (1994), provides the relevant authority in situations where the underlying sanction is a mistrial. A trial court's "discretionary authority to impose costs enables [the court] to penalize conduct disruptive to the administration of justice." *Id.*; *see also Filppula-McArthur v. Halloin*, 2000 WI App 79, ¶ 17, 234 Wis. 2d 245, 610 N.W.2d 201, *affirmed by* 2001 WI 8, 241 Wis. 2d 110, 622 N.W.2d 436. In *Schultz v. Darlington*, our supreme court recognized that under Wis. Stat. § 814.036, "circuit courts have the authority to impose costs on an attorney whose actions have resulted in a mistrial." *Schultz v. Darlington*, 181 Wis. 2d at 656. Here, the mistrial was declared as a direct result of Forman's unwillingness to obey the court's scheduling order. *See Filppula-McArthur*, 234 Wis. 2d 245, ¶ 17. Accordingly, we conclude that the trial court reasonably exercised its discretion when it assessed costs against Forman. *See id.*

¶ 36. Forman also argues that the attorneys' fees claimed by the defendants were "excessive, unreasonable and unrelated to the mistrial." Forman points out that the supporting material does not sufficiently detail a breakdown of charges for hours billed, a description of the services rendered and an explanation of the rendered services relationship to the mistrial.

¶ 37. The general rule is that a trial court's findings of fact will not be disturbed on appeal unless clearly erroneous. *Fireman's Fund Ins. v. Bradley Corp.*, 2003 WI 33, ¶ 67, 261 Wis. 2d 4, 660 N.W.2d 666. An exception to this rule exists with respect to determinations of the value of legal services, because the value of legal services is reviewed on appeal by judges who have expert knowledge as to the reasonable value

of legal services. *Id.*, ¶ 67. The proper factors to consider when determining reasonable attorneys' fees include:

> [T]he amount and character of the services rendered; the labor, time, and trouble involved; the character and importance of the litigation; the amount of money or value of the property affected; the professional skill and experience called for; the standing of the attorney in his [or her] profession; and the general ability of the client to pay and the pecuniary benefit derived from the services.

*Id.* (citation omitted).

¶ 38. We agree with Forman that the information provided by the defense was not sufficient to enable the trial court or this court to determine a reasonable figure for attorneys' fees in this case. *See id.*, ¶¶ 67–69. Affidavits and bills of costs referencing "trial preparation," "trial attendance," and "work associated with the mistrial" do not give either court enough information to employ the analysis required by Wisconsin law. *See id.*, ¶¶ 68–69. It is not possible to know from the affidavits the character of the work performed, how much time was spent on each type of work, and who performed the work. *See id.*, ¶ 69. Without this information, a court cannot determine whether the fees are reasonable. Consequently, we reverse the trial court's award of attorneys' fees insofar as the amount awarded, but as already noted, we affirm the decision to award costs and fees in and of itself.

¶ 39. We remand the award of attorneys' fees to the trial court for additional evidence and the determination of reasonable attorneys' fees. In order to address the defendants' concerns that providing additional evidence "would invade the attorney-client privilege," the court can look at the defendants' detailed billing in

camera or the defendants can redact from their time records any content of substance while still providing for the record the character of the work performed, how much time was spent on each type of work, and who performed the work. *See id.*, ¶ 69. Without this information, a court cannot determine whether the fees are reasonable.

¶ 40. Finally, Forman argues that he was entitled to discovery before the evidentiary hearing regarding the fees and costs claimed by the defendants. Forman's discovery concerns are a nonissue given our remand directions that the court require the defendants to provide proper documentation for a determination whether their fees are reasonable.

## CONCLUSION

¶ 41. In short, we reject Forman's claim that the defendants' motions for fees and costs were untimely. We uphold the trial court's grant of a mistrial. We uphold its decision to award costs and attorneys' fees; however, we reverse its decision insofar as the *amount* awarded because the evidence provided by the defendants was not sufficient for a court to make a reasonableness determination, as is required by Wisconsin law. On remand, the defendants should be instructed to provide more detailed time records and evidence to support the specific amount of fees and costs claimed. Forman's discovery argument need not be addressed because the information he seeks will be provided upon remand.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.