COURT OF APPEALS
DECISION
DATED AND FILED

**July 16, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP1736**

STATE OF WISCONSIN

Cir. Ct. No.  2017CV1008

IN COURT OF APPEALS
DISTRICT IV

THE BANK OF NEW YORK MELLON,

   PLAINTIFF-RESPONDENT,

V.

ELIZABETH M. BROZEK AND MICHAEL F. BROZEK,

   DEFENDANTS-THIRD-PARTY
   PLAINTIFFS-APPELLANTS,

DEPARTMENT OF REVENUE, TD BANK USA, AND UNITED STATES OF
AMERICA,

   DEFENDANTS,

V.

BAYVIEW LOAN SERVICING,

   THIRD-PARTY DEFENDANT-RESPONDENT.

APPEAL from a judgment and an order of the circuit court for Dane County: FRANK D. REMINGTON, Judge. *Affirmed*.

Before Kloppenburg, Graham, and Nashold, JJ.

¶1 KLOPPENBURG, J. This case arises from a foreclosure action filed by The Bank of New York Mellon against Elizabeth and Michael Brozek. At issue on appeal are a counterclaim and an affirmative defense asserted by the Brozeks against the Bank, and a claim asserted by the Brozeks in a third-party complaint against Bayview Loan Servicing, the servicer of the loan that is the subject of the foreclosure action. The counterclaim, affirmative defense, and third-party claim all involve Bayview's handling of the Brozeks' multiple applications for a loan modification prior to the commencement of the foreclosure action. The Brozeks argue that on the parties' cross-motions for summary judgment: (1) the circuit court erroneously granted summary judgment in favor of the Bank (a) dismissing the Brozeks' counterclaim of breach of the implied duty of good faith and fair dealing, and (b) rejecting the Brozeks' affirmative defense to the Bank's foreclosure action of failure to mitigate damages; and (2) the circuit court erroneously granted summary judgment in favor of Bayview, dismissing the Brozeks' claim that Bayview violated the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601-17 (2018).[1]

---

[1] In the circuit court, the Brozeks also asserted against the Bank affirmative defenses including laches and waiver, and against Bayview claims including breach of contract, promissory estoppel, and violation of WIS. STAT. § 224.71 (2017-18). On appeal, the Brozeks do not challenge the circuit court's rulings against the Brozeks on these affirmative defenses and third-party claims. While the Brozeks argue that the court needlessly ruled against them on their breach of contract claim against Bayview because they had amended their third-party complaint against Bayview to dismiss that claim, we do not address that argument further because it has no bearing on the merits of their appeal.

(continued)

¶2      We first conclude that the Bank is entitled to summary judgment dismissing the Brozeks' counterclaim of breach of the implied duty of good faith and fair dealing. In doing so, we explain that the Brozeks have not shown that the contract that existed between them and the Bank imposes a duty of good faith and fair dealing regarding the handling of the Brozeks' loan modification applications. We next conclude that the Bank is entitled to summary judgment rejecting the Brozeks' affirmative defense of failure to mitigate damages. In doing so, we explain that the Brozeks fail to develop a meaningful argument explaining how the defense relates to the foreclosure judgment, except that the defense is intertwined with their counterclaim of the implied duty of good faith and fair dealing, which, as stated above, does not survive summary judgment; we also explain that the Brozeks fail to present evidence permitting any measure of the damages that the Bank failed to mitigate. Finally, we conclude that Bayview is entitled to summary judgment dismissing the Brozeks' third-party RESPA claim because the Brozeks fail to present evidence that they suffered actual damages from the purported RESPA violations. Accordingly, we affirm.

## BACKGROUND

¶3      The following facts are undisputed.

---

In this opinion, we refer to the Bank and to Bayview separately when referencing the issues that apply to them separately. Because the Bank and Bayview appeared and argued together in the circuit court and on appeal, where they have filed one respondents' brief, we refer to them collectively as the Bank when referencing their arguments.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted. All references to the United States Code are to the 2018 version unless otherwise noted.

¶4      In 2006, the Brozeks executed a note and mortgage on a house in Maple Bluff, securing a loan for $445,000.[2]   The Bank is the holder of the note, and Bayview has serviced the loan at all times pertinent to this appeal.   The Brozeks stopped making the monthly payments required under the terms of the loan in March 2012.   The Bank filed a foreclosure action in July 2012, and the action was voluntarily dismissed in October 2013.

¶5      Between March 2014 and April 2017, the Brozeks submitted to Bayview numerous Requests for Mortgage Assistance.[3]   We follow the Brozeks' lead in referring to these requests as loan modification applications.   Bayview rejected all but the last application for the stated reason, which the Brozeks dispute, that the Brozeks failed to provide all the documents that Bayview requested.   In each letter rejecting the Brozeks' applications, Bayview stated, "Should you be able to provide the documentation at a later date, please submit it immediately so that we can continue to review your request."   The Brozeks submitted numerous documents in support of their applications and in response both to Bayview's requests for additional documentation and to Bayview's rejection letters throughout the period from March 2014 through May 2017.

¶6      In March 2017, the Brozeks submitted to Bayview what would be their final loan modification application.   After requesting and receiving additional documentation from the Brozeks, Bayview offered the Brozeks a trial plan with

---

[2] In this opinion we sometimes refer to the note and mortgage together as "the loan."

[3] While the Brozeks do not dispute the Bank's proposed fact that they submitted nine loan modification applications during this time, the evidence submitted by the Brozeks indicates that they submitted seven loan modification applications during this time.   Whether the number is seven or nine is not material to the issues on appeal.

modified payments. The Brozeks rejected the offer for their stated reason that they could not afford the modified payments.

¶7 The Bank filed this foreclosure action in April 2017. The Brozeks asserted multiple counterclaims and defenses to the foreclosure, and filed a third-party complaint asserting multiple claims against Bayview. All parties filed summary judgment motions. In ruling on the motions, the circuit court granted the Bank's request for foreclosure. Pertinent to this appeal, the circuit court also: (1) granted summary judgment in favor of the Bank (a) dismissing the Brozeks' counterclaim of breach of the implied duty of good faith and fair dealing and (b) rejecting the Brozeks' affirmative defense of the Bank's failure to mitigate damages; and (2) granted summary judgment in favor of Bayview dismissing the Brozeks' claim that Bayview violated RESPA. This appeal follows.

## DISCUSSION

¶8 This court reviews a grant of summary judgment de novo, using the same methodology employed by the circuit court. *Bank of New York Mellon v. Klomsten*, 2018 WI App 25, ¶31, 381 Wis. 2d 218, 911 N.W.2d 364. Summary judgment is proper if "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." *Id.*; WIS. STAT. § 802.08(2).

¶9 The Brozeks raise three issues on appeal. We address and reject each of the Brozeks' arguments in turn.

### I. Breach of the Implied Duty of Good Faith and Fair Dealing

¶10 The Brozeks argue that the circuit court erred in entering summary judgment dismissing their counterclaim that the Bank breached the implied duty of

good faith and fair dealing (which we will refer to as the duty of good faith) regarding Bayview's handling of the Brozeks' loan modification applications. Specifically, the Brozeks fault Bayview for "delay[ing] the process" and "wrongfully denying" the Brozeks' applications if requested documents were not in its office before the due date stated in the requests, in purported violation of RESPA.[4]  As we explain, we conclude that the Brozeks' argument fails because they do not establish a prerequisite for their breach of the duty of good faith counterclaim, namely, a contractual obligation with respect to loan modification applications.

¶11    The duty of good faith is not amenable to precise definition, but the Wisconsin Supreme Court has summarized it as follows:

> Parties to a contract have a duty of good faith to each other.… [I]t may be said that contracts impose on the parties thereto a duty to do everything necessary to carry them out.... Moreover, there is an implied undertaking in every contract on the part of each party that he [or she] will not intentionally and purposely do anything to prevent the other party from carrying out his [or her] part of the agreement, or do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

---

[4] The Bank, noting that the Brozeks concede in their appellants' brief that the Bank is "not subject to RESPA," argues that the Bank cannot be held vicariously liable for any RESPA violations by the servicer and is, therefore, "shielded" from any breach of the duty of good faith arising from those violations.  The Brozeks in reply conclusorily assert, without citation to specific legal authority, that under Wisconsin contract law, the Bank is liable for the servicer's "performance of the mortgage servicing obligations."  We do not reach this issue because we conclude that the Brozeks' duty of good faith claim fails based on the Brozeks' failure to establish a contract from which the Bank's duty of good faith regarding the handling of loan modification applications arises. *See Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

*Metropolitan Ventures, LLC v. GEA Assocs.*, 2006 WI 71, ¶35, 291 Wis. 2d 393, 717 N.W.2d 58, *opinion clarified on denial of reconsideration*, 2007 WI 23, 299 Wis. 2d 174, 727 N.W.2d 502 (citations and quoted source omitted).  The duty to act in good faith stems from the performance of duties inherent in the contract. *Chayka v. Santini*, 47 Wis. 2d 102, 107, 176 N.W.2d 561 (1970).  The party claiming breach of a contractual duty "must establish the existence of the contract" from which the duty arises.  *VanHierden v. Swelstad*, 2010 WI App 16, ¶11, 323 Wis. 2d 267, 779 N.W.2d 441 (2009).

¶12     Here, the Brozeks base their duty of good faith counterclaim solely on the note and mortgage.  The note and mortgage comprise a contract between the Brozeks and the Bank, and the Bank has an implied duty of good faith regarding the obligations and benefits contemplated by that contract.  The question is whether the note and mortgage impose a duty of good faith regarding a loan modification process.  We now review each provision in the note and mortgage that the Brozeks assert imposes on the Bank a duty to handle in good faith the Brozeks' loan modification applications.[5]

¶13     First, the Brozeks point to the provision in the mortgage entitled, "Borrower Not Released; Forbearance By Lender Not a Waiver."  That provision states, "Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower … shall not operate to release the liability of Borrower."  However, the Brozeks do not

---

[5] The Brozeks argue that the circuit court erred in considering only the note and not the mortgage.  While the court's decision shows to the contrary, this argument is misplaced because, as stated, our review on summary judgment is de novo.

explain how this provision imposes on the Bank a duty to handle in good faith any loan modification applications or to grant a loan modification in the event of default. We decline to consider their conclusory reference to this provision because it is insufficiently developed. *See Associates Fin. Servs. Co. of Wis., Inc. v. Brown*, 2002 WI App 300, ¶4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56 (the court may decline to consider conclusory and undeveloped arguments that are not adequately briefed).

¶14    Second, the Brozeks point to "the [unwritten] obligation to mitigate damages" as a basis for their breach of the duty of good faith counterclaim. The Brozeks concede that there is no controlling Wisconsin case law "applying the covenant of good faith and fair dealing to mitigation of damages." The Brozeks provide no compelling reason for us to develop such case law, and, therefore, we do not analyze this proposition further.

¶15    Third, the Brozeks argue that the Bank's compliance with RESPA was bargained for in the loan. RESPA "is a consumer protection statute that regulates the activities of mortgage lenders, brokers, servicers, and other businesses that provide services for residential real estate transactions." *Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1053 (7th Cir. 2018).[6]

¶16    The Brozeks point to the following two provisions in the mortgage that they argue "incorporate" RESPA requirements into their contract with the

---

[6] The Bureau of Consumer Financial Protection issued 12 C.F.R. § 1024 (2020) to implement RESPA; the regulation governs in pertinent part servicers' handling of requests for loan modification. The Brozeks assert, and the Bank does not dispute, that the pertinent RESPA regulatory provisions became effective in January 2014.

Bank:  (1) the definition of "RESPA" as the "Real Estate Settlement Procedures Act … and its implementing regulation … as they might be amended from time to time"; and (2) the definition of "Applicable Law" as "all controlling applicable federal, state and local statute regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."

¶17    However, the Brozeks indicate, and our review of the note and mortgage reveals, no provision in which either of the terms "RESPA" or "Applicable Law" is tied to the handling of loan modification applications specifically or to loan modification generally in the event of default.  As the Bank notes, "RESPA" occurs in only two places in the mortgage—in section 3 regarding escrow funds, and in section 20 regarding servicing transfer; and "Applicable Law" occurs in twelve places—regarding escrow funds, property insurance, mortgage insurance, interest on miscellaneous proceeds, fee charges, notice to the borrower, governing law, execution of due on sale clause, period of reinstatement, sale of note, notices upon foreclosure sale, and fee for releases.

¶18    The Brozeks point to the mortgage's "governing law" provision that states, "All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law."  However, the Brozeks identify no "rights and obligations contained in" the mortgage that pertain to loan modifications or handling of loan modification applications.[7]  Rather, they assert

---

[7] The mortgage provision referenced in ¶14 above, that if the Bank extends the time for payment of the loan, it does not release the liability of the borrower, by its plain language does not provide a "right or obligation" of the Bank to provide such an extension.

that the RESPA statutory provisions related to loan modification constitute express legislative declarations of public policy which become a part of the mortgage and regulate the parties' obligations. As we explain, the cases the Brozeks cite in support of this assertion are inapposite.

¶19 In the first case, this court held that we would not enforce a contract providing for the sale of a parcel of real estate without a plat approval where a statute imposes criminal penalties on the seller of such unapproved parcels. ***Gordie Boucher Lincoln-Mercury Madison, Inc. v. J & H Landfill, Inc.***, 172 Wis. 2d 333, 334, 493 N.W.2d 375 (Ct. App. 1992). The Brozeks quote the following language from that case: "Where the public policy of the state is expressed in acts of the legislature, the statutory provisions 'step in and control and regulate the mutual rights and obligations' of the parties to a contract relating to the subject matter of the statute." ***Id.*** at 340 (quoted source omitted). However, the Brozeks neglect to quote the language that follows, referencing the criminal statute at issue: "[w]hen the legislative will is expressed in the peremptory terms of such a statute, it is paramount and absolute, and cannot be varied or waived by the private conventions of the parties." ***Id.*** (internal quotations and quoted source omitted). The Brozeks identify no such statutory "peremptory terms" pertinent to their case; nor do they explain how ***Gordie Boucher Lincoln-Mercury*** applies to a general "applicable law" provision in a contract such as that at issue here.

¶20 In the second case, our supreme court considered a constitutional challenge to a statute that impaired the obligation of a contract. ***State ex rel. Building Owners v. Adamany***, 64 Wis. 2d 280, 294, 219 N.W.2d 274 (1974). The court stated:

> [T]he freedom of contract is not unlimited. Every contract
> is subject to the law of the state when it is written, and will

10

> be subject to a law of the state enacted after the bargain if it is in the public interest, under the police power, to attach subsequent conditions to the contract. It is simplistic to say, as the plaintiffs do, that any state infringement on the right to contract violates the constitution. It is equally simplistic to say, as apparently do the defendants, that any legislation that arguably has some public purpose will override a previously made bargain.

*Id.*

¶21 The court then examined "[t]he conditions under which contractual rights can be properly altered or infringed upon by the police power." *Id.* The Brozeks argue from this that "statutory and contractual obligations … are one and the same." The Brozeks engage in precisely the "simplistic" exercise criticized in the decision they cite. More importantly, they do not identify where in the note and mortgage there are any rights to loan modification that have been altered by RESPA, or what RESPA provision gives a borrower who has defaulted a *right* to loan modification.

¶22 The Bank cites several non-Wisconsin cases that hold that provisions like the "RESPA" and "applicable law" definitions in the Brozeks' mortgage do not function to incorporate RESPA into the contract or provide that violation of "RESPA" or any such "applicable law" is a breach of contract. *See Allen v. Ocwen Loan Servicing, LLC*, No. H-15-1672, 2015 WL 12778694, at *4 (S.D. Tex. Dec. 24, 2015) (language incorporating RESPA into a security instrument does not imply that if a party violates state or federal law it also breaches the contract); *Anderson v. Wells Fargo Home Mortg.*, No. 14-5013 ADM/JSM, 2016 WL 755615, at *3-4 (D. Minn. Feb. 25, 2016) (no indication that a boilerplate applicable law provision was intended to import RESPA into the mortgage contract); *Page v. JP Morgan Chase Bank, N.A.*, 605 Fed. Appx. 272, 275 (5th Cir. 2015) (the RESPA term identifies the law that governs the agreement but does

not provide that violation of that law is a breach of contract); ***Uzodinma v. JPMorgan Chase Bank N.A.***, No. 3:13-CV-5010-L, 2014 WL 4055367, at *4 (N.D. Tex. Aug 14, 2014) ("applicable law" provision "does not imply that if a party to the contract violates a state or federal law, it also breaches the contract.… This argument yields an absurd result, as any violation of any state or federal law would automatically be a breach of contract, and is not reflected in the language of the Deed of Trust").

¶23 We find these cases persuasive, and the Brozeks cite no case to the contrary. Nor do they cite any case that holds that a lender breaches the duty of good faith where the servicer rejected applications as incomplete because, as the Brozeks argue happened here, the requested documents were either not provided to the servicer by the due date "or arrived too close to the [due] date to allow [the servicer] a 'cushion'" to evaluate the documents. We have explained that we need not consider an argument without legal authority specifically supporting the pertinent propositions. ***Young v. Young***, 124 Wis. 2d 306, 312, 369 N.W.2d 178 (Ct. App. 1985).

¶24 In sum, the Brozeks fail to identify any provision in the note or mortgage supporting a duty of good faith regarding the handling of loan modification applications. Rather, as stated by the circuit court:

> The mortgage note outlines what the parties originally bargained for in this case. The note states that "[i]n return for a loan that I have received, I promise to pay U.S. $445,000." … Under the note, the Brozeks are required to "make [the required] payments every month until I have paid all of the principal and interest and any other charges … I owe under this note.… If I do not pay the full amount of each monthly payment … I will be in default." … Nowhere does the mortgage note state that the parties bargained for a modification of payment terms should the Brozeks go into default. In fact, the mortgage note seems to rule it out.… ("Even if, at a time when I am

> in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.) … ("Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder.")

These provisions referenced by the circuit court include no bargain for the handling of loan modification applications specifically, or for loan modification generally.

¶25 In sum, the Brozeks and the Bank contracted for a loan with a repayment plan, and the contract specifically provided that the Bank can default the loan for nonpayment. There is no language in the note or mortgage that requires the Bank to consider a loan modification or that gives the Brozeks a contractual right to any particular process for applying for one. *See M&I Marshall & Isley Bank v. Schlueter*, 2002 WI App 313, ¶15, 258 Wis. 2d 865, 655 N.W.2d 521 (a party does not breach the duty of good faith when the party acts pursuant to what the contract expressly provides).

¶26 Because there is no underlying contractual duty under the note or mortgage regarding the handling of loan modification applications, the Brozeks cannot maintain an action for breach of the duty of good faith on that basis. The Bank is entitled to summary judgment dismissing the Brozeks' breach of the duty of good faith counterclaim.

## II. Mitigation of Damages

¶27 The Brozeks argue that the Bank failed to mitigate its damages stemming from the Brozeks' default, and they base that argument on Bayview's purported violation of RESPA in its handling of their loan modification applications. As we explain, we conclude that: (1) the Brozeks fail to make any

meaningful argument, supported by relevant legal authority, explaining how Bayview's handling of their loan modification applications is a bar to summary judgment in a foreclosure action; (2) the Brozeks fail to distinguish this affirmative defense from their breach of the duty of good faith claim, which we have concluded above does not survive summary judgment; and (3) the Brozeks fail to point to any facts permitting any measure of the damages that should have been mitigated.

¶28     "An injured party has a duty to mitigate damages, that is, to use reasonable means under the circumstances to avoid or minimize the damages. An injured party cannot recover any item of damage which could have been avoided. The burden of proof is on the delinquent party to show that the injured party could have mitigated its damages." *Kuhlman, Inc. v. G. Heileman Brewing Co.*, 83 Wis. 2d 749, 752, 266 N.W.2d 382 (1978). Whether a party fails to mitigate damages is a question of fact. *Garceau v. Bunnell*, 148 Wis. 2d 146, 155, 434 N.W.2d 794 (Ct. App. 1988).

¶29     First, the Brozeks offer no argument as to why their affirmative defense of the Bank's failure to mitigate damages should bar summary judgment in a foreclosure action. The Brozeks cite no Wisconsin authority for this proposition, and at least one other jurisdiction has concluded that the "failure to mitigate damages is not an affirmative defense to a foreclosure action; rather a dispute about the exact amount owed by a mortgagor to a mortgagee does not preclude summary judgment directing a foreclosure sale." *CIT Bank, N.A. v. Nwanganga*, 328 F. Supp. 3d 189, 199 (S.D.N.Y. 2018) (applying New York law).

14

¶30 Second, the Brozeks throughout their briefing intertwine the Bank's purported failure to mitigate damages with its purported breach of the duty of good faith. Their failure to distinguish the two defeats the former in light of our conclusion, explained above, that the latter does not survive summary judgment.

¶31 Third, to the extent the Brozeks are arguing that the Bank's failure to mitigate damages creates a dispute regarding how much they owe the Bank, in that if their application had been evaluated in 2014 they would have owed the Bank much less, the Brozeks point to no facts "permitting a reasonable estimate as to how much the damages could have been mitigated." *Schmidt v. Schabow*, 265 Wis. 154, 160, 60 N.W.2d 735 (1953). They identify no payments they made that they should not have made, and they present no facts permitting an estimate of the interest and fees that accrued from the date of their 2014 application, which they assert should have been evaluated and either approved or denied in 2014, to the 2017 time of foreclosure. While the Brozeks seem to suggest that the damages the Bank failed to mitigate comprise the interest and fees that accrued since 2014, the Bank has waived a deficiency judgment. Thus, the Bank is not seeking to collect any such accrued fees and interest over and above the sale price of the house, and the Brozeks present no evidence that, to the extent that the sale price of the house exceeded the principal balance, the difference represented "damages" in the form of accrued interest and fees that they did not owe in 2014.

¶32 In sum, we conclude that the Bank is entitled to summary judgment rejecting the Brozeks' affirmative defense to the foreclosure action based on the failure to mitigate damages.

15

## *III. RESPA Claim*

¶33    The Brozeks argue that the circuit court erroneously dismissed on summary judgment their third-party claim that Bayview's handling of their loan modification applications violated RESPA.  The court determined that the Brozeks "at least set forth specific facts" sufficient to create a factual dispute as to whether Bayview violated RESPA.  Nevertheless, the court ruled that the Brozeks' RESPA claim fails because they do not present evidence of actual damages.  As we explain, we agree.

¶34    RESPA allows a borrower to recover from a servicer that fails to comply with its terms "any actual damages to the borrower as a result of the failure."  12 U.S.C. § 2605(f)(1)(A).  The federal courts have held that, to survive summary judgment, a borrower must present evidence of actual damages resulting from the asserted RESPA violation.  *See* ***Diedrich v. Ocwen Loan Servicing, LLC***, 839 F.3d 583, 591 (7th Cir. 2016) (on summary judgment borrowers "had to come forward with evidence sufficient to support an award of actual damages to pursue their RESPA claims … [s]pecifically, that [the servicer's] failures to comply with RESPA … caused their injury"); *see also* ***Moore v. Wells Fargo Bank, N.A.***, 908 F.3d 1050, 1059 (7th Cir. 2018) ("RESPA does not provide relief for mere procedural violations.  Plaintiffs bringing claims under RESPA must show actual injury.").[8]    RESPA also provides that a prevailing plaintiff may

---

[8] Because RESPA is a federal statute, its interpretation by the federal courts, particularly the Seventh Circuit Court of Appeals, provides persuasive guidance.  *See* ***Klein v. Board of Regents of the Univ. of Wis. Sys.***, 2003 WI App 118, ¶13, 265 Wis. 2d 543, 666 N.W.2d 67 ("Although we are bound only by the opinions of the United States Supreme Court on questions of federal law, we conclude that the reasoning of the Seventh Circuit Court of Appeals … is very persuasive." (internal citation omitted)).

recover, "[i]n addition to the amounts under paragraph (1) or (2) … the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances." 12 U.S.C. § 2605(f)(3).

¶35    Like the circuit court, we assume for the purposes of argument that at least some aspect of Bayview's actions violated RESPA.  Even with the benefit of that assumption, the Brozeks need to come forward with evidence supporting an award of actual damages.  *Diedrich*, 839 F.3d at 591.  As we explain, the Brozeks have not provided any such evidence to survive summary judgment.

¶36    As best we can discern, the Brozeks argue that they are entitled to proceed to trial on the following types of damages:  (1) attorney fees, (2) accrued interest and fees owing on the loan, (3) compensation for loss of the opportunity to declare bankruptcy when they owed a lower amount of foreclosure costs, (4) compensation for loss of the opportunity to have obtained an affordable loan modification enabling them to keep their house, and (5) compensation for loss of the opportunity to be evaluated for a loan modification under a since-discontinued program.  We address each type of damages in turn.

¶37    The first type of damages identified by the Brozeks is attorney fees. In their reply brief, the Brozeks clarify that the attorney fees they seek are fees for services that attorney Daniel Schlichting, who was not the attorney representing

17

them in this case, provided "before the RESPA claims were brought in this case."[9] While the Brozeks do not cite the record, we observe that in Schlichting's affidavit, he avers that he provided legal services to the Brozeks in connection with "mortgage foreclosure actions" and with the "Loan Modification application process" from January 14, 2013 "to date" (which we understand to be March 25, 2019, when the affidavit was signed). In their depositions, the Brozeks indicate that Schlichting assisted them with assembling the documents requested by Bayview regarding their various loan modification applications. The Bank responds that Schlichting's attorney fees are not cognizable damages under RESPA, citing *Moore*, 908 F.3d at 1059. As we explain, we agree.

¶38 In *Moore*, the borrower Moore submitted to the servicer of his loan a request for information about his account after the entry of a foreclosure judgment against him but before the scheduled sheriff's sale. *Id.* at 1054-55. Moore sought as damages resulting from the servicer's alleged RESPA violations the fees that Moore paid to an attorney to review the servicer's response to Moore's request. *Id.* at 1058-59. The court held that these attorney fees are not actual damages under RESPA for at least two reasons. *Id.* at 1059-60. First, the court ruled that fees for such legal assistance do not constitute a cost caused by the servicer's alleged violation of RESPA. *Id.*, at 1059. Second, the court ruled that, even if the

---

[9] The Brozeks in their appellants' brief neither specify nor identify a basis in the record for the attorney fees they seek, and we could reject their argument on that basis alone. *See* **State v. McMorris**, 2007 WI App 231, ¶30, 306 Wis. 2d 79, 742 N.W.2d 322 (The court of appeals may "choose not to consider … arguments that lack proper citations to the record."); **Jensen v. McPherson**, 2004 WI App 145, ¶6 n.4, 275 Wis. 2d 604, 685 N.W.2d 603 ("It is not this court's responsibility to sift and glean the record in extenso to find facts supporting [the party's] argument."). But, the nature of those attorney fees is clear from the record and the Bank addresses this issue with an understanding of what specific attorney fees are the subject of the Brozeks' argument. Accordingly, we address the merits of this argument.

attorney fees are directly attributable to the servicer's alleged RESPA violations, the fees do not constitute actual damages under RESPA because

> attorney fees are addressed in another section of the statute. We see no need to stretch the actual damage provision to cover attorney fees as well, at least those directly related to the RESPA issues. *See* 12 U.S.C. § 2605(f)(3) (prevailing plaintiffs can collect attorney fees). Such a finding would render § 2605(f)(3) superfluous, which is … a result courts generally try to avoid.

*Id.* at 1060.

¶39 The Brozeks argue that the holding in *Moore* does not apply to preclude the attorney fees that they seek as RESPA damages because the fees they seek were incurred "pre-litigation." According to the Brozeks, Moore's fees were incurred "after the litigation began" whereas "Schlichting's work was performed before the RESPA claims were brought in this case." The distinction on which the Brozeks base their argument does not withstand scrutiny. The record establishes that the Brozeks retained Schlichting in January 2013, after the first foreclosure action was filed against the Brozeks in 2012, and continued into 2019, through and after the filing of this foreclosure action in 2017, for services "in connection with the mortgage foreclosure and loan modification proceedings." Schlichting's affidavit and time sheets show that his services concerned either the foreclosure litigation or his assistance in helping the Brozeks obtain a loan modification. Those are precisely the kinds of services and corresponding attorney fees that the court in *Moore* held do not support a damages claim under RESPA. *Id.* at 1059-60 (referencing fees incurred in connection with foreclosure-related litigation and RESPA-related activities). The Brozeks do not persuade us that the distinction they purport to draw—that attorney fees incurred after the start of litigation do not constitute actual damages under RESPA but purported "pre-litigation" attorney

19

fees do—suffices to preclude application of the *Moore* holding to their claim for attorney fees here.

¶40    As for the second through fourth types of damages, the Brozeks argue only that they "allege damages 'sufficiently concrete to justify a trial,'" quoting *United Concrete & Constr., Inc. v. Red-D-Mix Concrete, Inc.*, 2013 WI 72, ¶53, 349 Wis. 2d 587, 836 N.W.2d 807. The problem with this argument is that the Brozeks ignore the subsequent language in *United Concrete* clarifying that, to survive summary judgment with respect to damages, a party must "advance[] evidence." *Id.* at ¶54. That language is consistent with the rulings in the RESPA-specific federal case law cited above that, to survive summary judgment, a borrower must present evidence of actual damages resulting from asserted RESPA violations.

¶41    The issue is not, as the Brozeks assert, whether they "allege damages sufficiently concrete to justify a trial"; it is what evidence of damages they have presented. The Brozeks speculate that, had Bayview evaluated and approved or denied their loan modification application in 2014, they would not have been presented with the modification in 2017 that was then unaffordable because of the interest and fees that had accrued since 2014. But, as stated above, they present no evidence connecting any actual damages with their suppositional and attenuated conjectures of how they would have acted if, maybe, Bayview had or had not approved a loan modification in 2014. They assert that Bayview's delay in deeming their applications complete "made the modification they were finally offered unaffordable," but they do not shape that assertion into an actual, cognizable injury; was the difference the Brozeks owed because of delay $2, $200,000, or no difference owed at all? We do not know, and therefore any damages alleged are not only speculative, but missing entirely from the evidence

presented. *See Moore*, 908 F.3d at 1061 (rejecting RESPA theory of damages that relied too much on attenuation and speculation to qualify as actual harm under RESPA). The Brozeks' assertions of damages as to the effect of the amount of the accrued interest and fees on their declaration of bankruptcy, and as to their lost opportunity to obtain a loan modification when their amount owed was lower, suffer from the same defects, and lack evidentiary support.

¶42     That leaves the Brozeks' argument as to the fifth type of damages, their lost opportunity to obtain a loan modification under a since-discontinued program, the Home Affordable Modification Program (HAMP). The Bank argues, citing supporting case law, that this damages claim does not survive summary judgment because the Brozeks did not plead any claim under HAMP and there is no private right of action to sue under HAMP.[10]  The Brozeks do not respond to this argument in their reply brief and, therefore, we deem them to have conceded that the Bank's arguments are correct. *See Fischer v. Wisconsin Patients Comp. Fund*, 2002 WI App 192, ¶1 n.1, 256 Wis. 2d 848, 650 N.W.2d 75 ("An argument

---

[10] As part of a string citation in support of its HAMP arguments, the Bank includes a Wisconsin Court of Appeals unpublished summary disposition order contrary to WIS. STAT. RULE § 809.23.

We also observe that the Brozeks may have increased their word count beyond that which they certified by use of screen shots. When a party uses screen shots to reproduce textual items, that party must manually count and include the words reproduced in its word count because a commercial word processor will not count those words. We do not discern that the Brozeks' brief exceeded the word count because of the screen shots, but parties that fail to count all words in a screen shot risk running afoul of appellate brief word count requirements. *See* WIS. STAT. 809.19(8)(c) and (d).

We caution both parties' counsel that future violations of the rules of appellate procedure will not be tolerated and may result in sanctions. *See* WIS. STAT. RULE § 809.83(2).

asserted by a respondent on appeal and not disputed by the appellant in the reply brief is taken as admitted.").[11]

¶43     In sum, Bayview is entitled to summary judgment dismissing the Brozeks' RESPA claim based on the Brozeks' failure to present evidence of actual damages.

## CONCLUSION

¶44     For the reasons stated, we conclude that the circuit court properly granted summary judgment dismissing the Brozeks' counterclaim that the Bank breached the duty of good faith, rejecting the Brozeks' affirmative defense that the Bank failed to mitigate its damages, and dismissing the Brozeks' third-party claim that Bayview violated RESPA, all regarding Bayview's handling of the Brozeks' loan modification requests in purported violation of RESPA.  Accordingly, we affirm.

> *By the Court.*—Judgment and order affirmed.

> Not recommended for publication in the official reports.

---

[11] The Brozeks cite one case for the proposition that a plaintiff "is bound by the facts alleged, not by his [or her] theory of recovery," but do not explain how this saves on summary judgment their failure to allege a HAMP claim in their complaint.  Accordingly, we do not consider further this insufficiently developed argument. *See State v. Flynn*, 190 Wis. 2d 31, 58, 527 N.W.2d 343 (Ct. App. 1994) (court need not address insufficiently developed arguments).

The Brozeks also argue that the circuit court improperly relied on the Net Present Value (NPV) test in determining that Bayview is entitled to summary judgment dismissing the Brozeks' RESPA claim for failure to present evidence of damages.  We need not reach this argument because we do not rely on the NPV test in our de novo review.